[No. 53590-6. En Banc. April 28, 1988.]

LORETTA PIPPINS, *Respondent,* v. ROBERT R. JANKELSON, *Petitioner.*

*Wolfgang Anderson* and *H. Michael Fields* (of *Anderson & Fields*), for petitioner.

*Ries & Kenison,* by *Larry W. Larson,* for respondent.

UTTER, J.—Robert Jankelson, petitioner, challenges the legal authority of the Grant County Superior Court Commissioner to modify child support payments which Jankelson had agreed to pay in a stipulated order dismissing an earlier paternity action. Jankelson also challenges the award of attorney fees. Finding no error, we affirm.

In March 1977, Loretta Pippins filed suit against Robert Jankelson seeking a determination of parentage and child support for two of Pippins' minor children, Thomas and Margaret. Jankelson counterclaimed on various grounds. Blood tests excluded Jankelson as the father of Thomas but did not exclude him as the father of Margaret. Matters were resolved by a stipulated order of the King County Superior Court dated November 15, 1977, in which Jankelson admitted paternity of Margaret. The order required Jankelson to pay child support of $250 per month for the first year and $200 per month thereafter. The lawsuits then pending between the parties were dismissed with prejudice.

When the order was entered, Jankelson was married with two children and had an adjusted gross income of $110,000. Pippins was unemployed, had no income, and had in her custody three additional children for whom she received no financial support.

In April 1985, Pippins filed the present action to modify child support, claiming that the amount was not sufficient to meet Margaret's current needs. After a full hearing that included testimony from both parties, the Commissioner increased Jankelson's monthly support obligations to $425 and awarded attorney fees of $975 to Pippins.

The Commissioner made several findings of fact which are not challenged on appeal. First, the child support amount originally established in 1977 was "not based upon the reasonable needs of the child" and was not the result of any analysis of relevant facts mandated by former RCW 26.26.130(5). Second, the amount provided "was considerably below the usual amount of support for a child given the respective incomes of the parties." Clerk's Papers, at 109. Third, Margaret's expenses have risen considerably

since the original order. Fourth, considering the needs of the child and the financial circumstances of the parties, "reasonable support" was set at $425 per month. Clerk's Papers, at 108–10.

Jankelson challenges only the authority of the court to make any modifications to child support at all under the circumstances of this case. He further contests the award of attorney fees.

## I

Jankelson first contends that the dismissal of Pippins' paternity action in 1977 precludes any subsequent modification of the monthly child support payments agreed to in the stipulated order.

The courts of this state have long had the general power to modify any judgment or order pertaining to child support payments whenever the needs of the child so require and the financial ability of the parties so allow. The power to modify is an aspect of the court's continuing jurisdiction in cases involving the welfare and maintenance of minor children. *Poland v. Poland,* 63 Wash. 597, 116 P. 2 (1911); *State v. Coffey,* 77 Wn.2d 630, 465 P.2d 665 (1970). As we noted years ago, "[t]hese matters, from their very nature, invoke the equitable powers of the court, and the jurisdiction is a continuing one . . ." *Dyer v. Dyer,* 65 Wash. 535, 537, 118 P. 634 (1911). While the judiciary has an independent equitable power to modify child support, *Holter v. Holter,* 108 Wash. 519, 185 P. 598 (1919), the authority of the courts in this area has also been affirmed by the Legislature in adopting the Uniform Parentage Act, RCW 26.26-.160.

The court's power to modify child support is of course dependent upon a prior determination of paternity. *Farris v. Farris,* 58 Wn.2d 837, 365 P.2d 14 (1961); *In re Jane Doe,* 38 Wn. App. 251, 684 P.2d 1368 (1984). Jankelson's admission of paternity in the 1977 stipulated order is sufficient for this purpose. Thus, the continuing jurisdiction and general authority to modify child support is not in doubt.

Jankelson does not dispute the court's general powers of modification. Instead, he argues that the original child support amount was negotiated as part of an overall settlement with Pippins, the terms of which were approved by the guardian ad litem representing Margaret, and that the agreement should stand as a final determination of the rights and obligations of the parties.

■ Although we favor the settlement of legal disputes and will generally uphold them against subsequent attack, we have never held that such settlements preclude the exercise of the court's equitable powers. We decline to do so here. The mere fact that an agreement exists between the mother and father regarding the amount of child support to be paid is insufficient to foreclose the possibility of a judicially mandated revision when the needs of the child so require. *State v. Bowen,* 80 Wn.2d 808, 498 P.2d 877 (1972); *Scudder v. Scudder,* 55 Wn.2d 454, 348 P.2d 225 (1960); *Ditmar v. Ditmar,* 48 Wn.2d 373, 293 P.2d 759 (1956). As we recently stated, agreements which restrict a minor child's right to seek increased support are "invalid as against public policy." *Hartman v. Smith,* 100 Wn.2d 766, 768, 674 P.2d 176 (1984); *see also* RCW 26.09.070.

Nor do we see why the presence of a guardian ad litem in the earlier settlement should affect the court's power of modification. The presence or absence of a guardian ad litem can be a factor in evaluating the fairness of any legal arrangement affecting the rights and interests of a minor child, *Haller v. Wallis,* 89 Wn.2d 539, 573 P.2d 1302 (1978), but it is neither the only nor even the most important one to consider. This is especially true in support cases, where courts are particularly solicitous of a minor child's interest in receiving the financial resources needed to live and to grow. Thus, while "[t]he law favors settlements, and consequently . . . also . . . their finality", *Haller,* at 544, the court's traditional powers of support modification are not compromised thereby.

## II

Jankelson next argues that even if the amount of child support provided in the 1977 stipulated order was modifiable, such modification can only be upon a showing of a substantial change of circumstances. He contends that the necessary showing was not made in the present case.

As a general rule, a paternity decree imposing child support obligations may be modified only upon a showing of a "substantial change of circumstances." RCW 26.26.160. The change of circumstances must also be of a kind not within the contemplation of the parties or the court at the time the original order of support was entered. *Wagner v. Wagner,* 95 Wn.2d 94, 621 P.2d 1279 (1980); *Lambert v. Lambert,* 66 Wn.2d 503, 403 P.2d 664 (1965). The showing of a substantial change of circumstances is similar to the requirement for the modification of decrees respecting maintenance or support arising from marital dissolution proceedings. RCW 26.09.170(1), .260(1).

However, this general rule presumes that the court entering the original order complied with the child support statute in accepting the stipulated support amount. RCW 26.26.130(5) requires the court to consider all relevant facts when determining child support.[1] Those facts include the needs of the child and the financial circumstances of the respective parents. The language of the statute is mandatory and it does not matter whether the court itself is

---

[1]RCW 26.26.130(5) states:

"In determining the amount to be paid by a parent for support of the child . . . the court shall consider all relevant facts, including, but not limited to:

"(a) The needs of the child;

"(b) The standard of living and circumstances of the parents;

"(c) The relative financial means of the parents;

"(d) The earning ability of the parents;

"(e) The need and capacity of the child for education, including higher education;

"(f) The age of the child;

"(g) The responsibility of the parents for the support of others; and

"(h) The value of services contributed by the custodial parent."

determining the amount or whether the amount is stipulated by the parties.

Thus, in any action in which child support is an issue, the courts are required to make an independent determination of the reasonableness of the amount based upon the factors listed in RCW 26.26.130(5). When a court fails to make this determination, a subsequent court exercising its traditional equitable powers may evaluate the reasonableness of the original amount and modify child support payments accordingly.[2]

The formality required for the court's determination will depend upon the nature of the proceeding. Where a court order is the result of a fully contested hearing in which all parties have appeared, it may be presumed that the court has independently examined the evidence and determined a reasonable level of child support in accordance with the statute. *See In re Rankin,* 76 Wn.2d 533, 537, 458 P.2d 176 (1969). We do not require an express finding of reasonableness in such instances. Thus, to modify a child support decree issued after a fully contested proceeding, the petitioning party must prove a substantial change of circumstances to warrant modification.

However, where a court order arises from an uncontested proceeding, no such presumption attaches. In these instances, court orders often merely reflect an agreement between the parties, such as in consent decrees or stipulated orders, or they reflect the allegations of only one party, such as in default decrees. It is not likely that the court has independently examined the evidence in such proceedings and, therefore, we presume otherwise. *Rankin,* at 537; *see also*

---

[2]This case arose before the enactment of Laws of 1988, ch. 275 which adopts a mandatory statewide child support schedule. The new act does not address whether the factors set forth in RCW 26.26.130(5) are to be considered in ordering support pursuant to the schedule. Since chapter 275 neither repeals nor modifies RCW 26.26.130(5), it appears that the Legislature intends that the courts make an independent determination of the reasonableness of the support amount calculated from the schedule based upon the factors listed in RCW 26.26.130(5). See section 3(2) of chapter 275 which requires an order for child support to be supported by written findings of fact upon which the support determination is based.

*In re Marriage of Timmons,* 94 Wn.2d 594, 617 P.2d 1032 (1980). This presumption can of course be overcome with clear evidence to the contrary.

The original level of child support payments in this case was established in a stipulated order. There is no indication from the record that the trial court independently examined the reasonableness of the child support payments when entering the order in November 1977. Thus, Loretta Pippins is not required to show a substantial change of circumstances in her petition to modify the child support provisions in the paternity decree.

The Superior Court Commissioner in the present action was therefore within his discretion in reviewing the original amount and determining that it "was considerably below the usual amount of support for a child given the respective incomes of the parties." Clerk's Papers, at 109. He was also within his discretion in determining that henceforth reasonable child support would be $425 per month.

Since it was not necessary in this instance to show a substantial change of circumstances to support modification, we decline to review the Commissioner's determination that such a showing was in fact made.

### III

Jankelson also challenges the award of attorney fees to Pippins, alleging there was insufficient demonstration of need.

■ The Uniform Parentage Act provides that in any actions brought under the statute "[t]he court may order that all or a portion of a party's reasonable attorney's fees" be paid by another party "in proportions and at times determined by the court." RCW 26.26.140. Based upon his evaluation of the resources of the parties, the Commissioner awarded attorney fees to Pippins of $975, an amount which, we note from the record, was less than half the legal expenses she incurred. This is an area committed to the

sound discretion of the trial court and under the circumstances presented here, we cannot say that it has been abused. *Koon v. Koon,* 50 Wn.2d 577, 313 P.2d 369 (1957).
We affirm.

PEARSON, C.J., BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.