[No. 44172-8-I.    Division One.    April 3, 2000.]

*In the Matter of the Marriage of* JOANNE SCHUMACHER, *Respondent,* and MARK E. WATSON, *Appellant.*

*Andrea Vogel Gilbert* of *Lawrie & Gilbert*, for appellant.
*Nancy S. Weil*, for respondent.

WEBSTER, J. — Mark Watson and Joanne Schumacher divorced and agreed to a retroactive method for calculating child support. Under this method, Watson's erratic employment decreased his child support obligations retroactively and caused Schumacher to owe money to Watson. She sought a modification of the child support order to eliminate the retroactive method and to impute income to Watson. The trial court modified the child support order and imputed income to Watson because it found that Watson was voluntarily underemployed and that the previous method created severe economic hardship for his child. Watson appeals arguing that the trial court abused its discretion in: 1) modifying the order of child support; 2) finding him voluntarily underemployed and imputing income to him, but not to his former wife; 3) increasing his health insurance liability; and 4) not awarding him attorney fees. We affirm because the trial court did not abuse its discretion. Schumacher seeks attorney fees and costs for a frivolous appeal. Because there is some merit to Watson's claims, we deny attorney fees and costs on appeal.

## FACTS

Mark Watson and Joanne Schumacher divorced in 1991. In their dissolution decree, they agreed to a method for calculating child support. The method required an annual retroactive review and recalculation of child support by an

accountant after each parent had already contributed child support. But, under this method, Watson's erratic employment retroactively decreased his child support obligations so much so that Schumacher had to pay back Watson for money he overpaid. Schumacher sought a modification of the child support order to eliminate this retroactive method. On February 18, 1999, the trial court modified the previous child support order because it created severe economic hardship on their child Juliet's financial needs. It found that the previous method of calculating child support was unwieldy and unpredictable because it annually and retroactively modified past support. After displacing this method, the court found Watson voluntarily underemployed and imputed income to him at a rate of $2,118 according to the standard child support schedule. RCW 26.19 app. Watson admitted that he averages only 8.9 working days a month, though sometimes he spends 16 hours at work. Nevertheless, he appeals.

## DISCUSSION

■ There is some dispute between the parties as to the standard of review for this appeal. The Court of Appeals reviews a modification of child support for abuse of discretion where the challenging party must demonstrate that the trial court's decision is manifestly unreasonable, based on untenable grounds, or granted for untenable reasons. *In re Marriage of Peterson*, 80 Wn. App. 148, 152, 906 P.2d 1009 (1995). For the reasons stated below, there is no abuse of discretion.

■ In addition, substantial evidence must support the trial court's findings of fact. *Peterson*, 80 Wn. App. at 153. Watson challenges the findings that the previous support order created severe economic hardship, was unwieldy and unpredictable, and did not meet the child's financial needs. Upon review of the record, we find that substantial evidence supports the trial court's findings. In 1992, 1994, and 1995, Watson owed Schumacher $899, $115, and $271, respectively. But, in 1993, 1996, and 1997, Schumacher

owed Watson $1,296, $3,069, and $1,650, respectively. These figures support the findings that the method of calculation was unwieldy and unpredictable. As a result, the child support method denied Schumacher an opportunity to budget their child's financial needs and therefore created severe economic hardship.

■ ■ Watson also assigns error to the finding that the previous order acts as an annual retroactive modification of past support. The law prohibits retroactive modification of child support because it opens the door to uncertainties, costs and hardship. *Cf. In re Marriage of Ortiz*, 108 Wn.2d 643, 648-49, 740 P.2d 843 (1987) (retroactive application of escalation clauses creates substantial uncertainties); *Mathews v. Mathews*, 1 Wn. App. 838, 842-43, 466 P.2d 208 (1970) (retrospective modification of accrued child support not allowed). As a general rule, child support payments become vested judgments when each installment is due. *In re Marriage of Stoltzfus*, 69 Wn. App. 558, 561, 849 P.2d 685 (1993). Special circumstances of an equitable nature may justify an exception to this rule and allow a court to credit child support payments if such can be done without injustice to the other party. *Mathews*, 1 Wn. App. at 843; *see also Stoltzfus*, 69 Wn. App. at 562. Nonetheless, chapter 26.19 RCW controls the method of calculation. *See also* RCW 26.09.100, .170(8)(a) (adjustment allowed only once every 24 months by filing a motion and child support worksheets). The only exception to the statutory method is by "deviation" as provided in the statute and supported by the evidence. RCW 26.19.075(2). Here, Watson and Schumacher estimated support, and later had an accountant adjust it after the fact, requiring either a refund or an extra payment. This method of calculation constitutes an annual retroactive modification of past support and does not comply with the controlling statute.

I

Uncontested Proceeding

■ ■ Watson initially asks whether the trial court

abused its discretion by modifying the method of calculation without first finding a substantial change in circumstances. Washington courts have general and equitable powers to modify any order pertaining to child support payments when the child's needs and parents' financial ability so require. *Pippins v. Jankelson,* 110 Wn.2d 475, 478, 754 P.2d 105 (1988). Just because the parties have an agreement on child support does not mean that the courts cannot revise it. *Pippins,* 110 Wn.2d at 479. It is true that, as a general rule, courts must find a substantial change of circumstances before modifying an order. *Pippins,* 110 Wn.2d at 480. But, this general rule presumes that the court independently examined the evidence after a fully contested hearing. *Pippins,* 110 Wn.2d at 480-81. Where a court order arises from an uncontested proceeding, we presume otherwise and, therefore, the court need not find a substantial change of circumstances. *Pippins,* 110 Wn.2d at 481-82.

Here, the parties came to an agreement on child support in an uncontested proceeding. Consequently, there is a presumption that the court did not independently examine the evidence. *Pippins,* 110 Wn.2d at 482. Watson has not overcome this presumption with clear evidence to the contrary. Therefore, the court need not find a substantial change of circumstances to modify the child support order.

## II
## Voluntarily Underemployed

The second issue that Watson raises is whether the trial court erred by finding him voluntarily underemployed and imputing income to him. Schumacher contends that Watson was not employed on a full-time basis and is therefore voluntarily underemployed. To calculate child support, RCW 26.19.071(6) requires the court to impute income to a voluntarily underemployed parent. A court makes this determination based on that parent's work history, education, health, age, and other relevant factors. RCW 26.19.071(6). Nonetheless, a court may not impute income to a parent

with gainful employment on a full-time basis. RCW 26.19-.071(6). A court must give meaning to every word of a statute because no part should be superfluous. *Clark v. Pacificorp*, 118 Wn.2d 167, 183, 822 P.2d 162 (1991). When a statute does not define a term, a court should give the term its usual and ordinary meaning. *In re Marriage of Blickenstaff*, 71 Wn. App. 489, 493, 859 P.2d 646 (1993) (citing *Dominick v. Christensen*, 87 Wn.2d 25, 27, 548 P.2d 541 (1976). RCW 26.19.071(6) does not define "full-time." According to the dictionary, full-time means "employed for or working the amount of time considered customary or standard." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 919 (3d ed. 1993).

This Court concluded the trial court did not abuse its discretion in finding that a parent was voluntarily underemployed when she worked half-time as a nurse, was the primary caretaker of five children ages 9 to 12, and was a member of the National Guard. *In re Marriage of Wright*, 78 Wn. App. 230, 234, 896 P.2d 735 (1995). In *Wright*, the record showed that the parent could have obtained full-time employment as a nurse and, therefore, imputing income to her was not an abuse of discretion. *Wright*, 78 Wn. App. at 234.

■ Watson cites *Peterson* to argue that he does not have to work "a 40-hour work week" to have gainful employment. In *Peterson*, a parent with a law degree had little experience in traditional legal practice. *Peterson*, 80 Wn. App. at 154. After losing his union negotiator position, he earned $18,000 a year as legal counsel and bail bond agent. *Peterson*, 80 Wn. App. at 154. This Court looked at his work history to determine whether he had gainful employment in his customary occupation. *Peterson*, 80 Wn. App. at 154. We found that his income fell within the range that he earned previously. *Peterson*, 80 Wn. App. at 154. In our holding, we noted that the statute could not impute income to him because he "was gainfully employed *full-time*." *Peterson*, 80 Wn. App. at 155. Full-time has some meaning in determining voluntary underemployment. *Wright*, 78 Wn.

App. at 234. That is not to say that Watson must work 40 hours per week.

In imputing income, the Washington Supreme Court has stated that a court should look at the level of employment "at which the parent is capable and qualified." *In re Marriage of Sacco*, 114 Wn.2d 1, 4, 784 P.2d 1266 (1990) (citing WASHINGTON STATE CHILD SUPPORT SCHEDULE COMMISSION, REPORT TO THE LEGISLATURE (Nov. 1987), at 16-17); *see also In re Marriage of Shellenberger*, 80 Wn. App. 71, 82, 906 P.2d 968 (1995) (Court looked at parent's full-time earnings following disability retirement). Watson admits that he did not work at his occupation during May, June, and December of 1998. He says he was unable to work in January 1988 after he fell off a roof and suffered a concussion causing him to spend four days in the hospital. According to Watson, he worked 103 days in 1998, but did not have invoices for all those days. He admits that he worked an average of only 8.9 days per month in 1998. But, he says that he occasionally worked 16 hours or more a day. Viewing the evidence presented, the trial court found he was voluntarily underemployed and imputed income to him. Looking at Watson's work history, education, health, age, and other relevant factors presented in the record, we find that the trial court did not abuse its discretion.

Watson argues that since the trial court imputed income to him, it should have imputed income to Ms. Schumacher on the same basis because her pay stubs allegedly indicated that she does not always work 40 hours a week. Because full-time does not necessarily mean 40 hours a week, as explained above, Watson's argument fails. The record demonstrates that Schumacher works full-time as is customary in her occupation. She regularly works five days a week in her family's flower shop. We find that the trial court did not abuse its discretion by imputing income only to Watson.

### III
### Health Insurance

Next, Watson argues that the trial court should not have

entered an order requiring each party to obtain health insurance for Juliet beyond the obligations imposed by the previous order because there was no oral ruling on the matter. Previously, both parents had to provide health insurance coverage as long as it was available through employment or union benefits and did not exceed 25 percent of a parent's basic child support obligation. The new written order of child support, however, requires both parents to provide health insurance *even if* the cost exceeds 25 percent of a parent's basic child support obligation. The previous order followed statutory requirements while the new order exceeds them. RCW 26.09.105(1)(b). Nonetheless, RCW 26.09.105 gives the trial court discretion to enter such a support order even if the cost of such coverage exceeds 25 percent. We cannot say that the trial court abused its discretion. If this entry was a clerical error, Watson may rely on CR 60(a) and RAP 7.2(e) for appropriate relief. *In re Marriage of Stern*, 68 Wn. App. 922, 927, 846 P.2d 1387 (1993) (citing CR 60(a); RAP 7.2(e)).

IV
Attorney Fees, Costs and Sanctions

Finally, Watson contends that the trial court should have awarded attorney fees to him because he does not have the financial ability to pay compared to his former wife. RCW 26.09.140 states that the court, after considering both parties' financial resources, may award reasonable attorney fees. The trial court decided not to award attorney fees to either party. Because Watson admits that his 1998 earnings were virtually identical to Schumacher's earnings, we find that the trial court did not abuse its discretion. For the same reason, we do not award attorney fees on appeal.

■ Watson also argues that he deserves attorney fees because his former wife acted with intransigence. Intransigence is the quality or state of being uncompromising. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1186 (3d ed. 1993). A court may award attorney fees when one parent's

intransigence causes the other parent to incur additional legal services, regardless of financial abilities. *In re Marriage of Foley*, 84 Wn. App. 839, 846, 930 P.2d 929 (1997). In *Foley*, this Court found that one parent's numerous frivolous motions, failure to attend his own deposition, and refusal to read correspondence from the opposing attorney, caused numerous delays and additional legal expense. *Foley*, 84 Wn. App. at 846. The Court held that the trial court did not abuse its discretion in awarding attorney fees based on intransigence. There is no such showing of intransigence in this record. Schumacher took appropriate legal actions to modify a child support order. Furthermore, Watson did not raise this issue below. RAP 2.5(a). With respect to attorney fees at trial, we find that the trial court did not abuse its discretion. Accordingly, we do not award attorney fees on appeal either.

■ Schumacher claims attorney fees and costs for a frivolous appeal. RAP 18.9(a) permits an award of attorney fees and costs for a frivolous appeal. An appeal is not frivolous if it presents debatable issues upon which reasonable minds could differ and there is a possibility of reversal. *Foley*, 84 Wn. App. at 847. Reasonable minds could differ as to whether the increased health insurance obligation is a clerical error. Accordingly, we find that Watson presented debatable issues and do not award attorney fees and costs on appeal.

Schumacher contends that the Court of Appeals should sanction Watson for filing an updated Declaration of Financial Need. In submitting his Declaration, Watson merely attempted to comply with RAP 18.1(c) in requesting attorney fees and costs. Sanctions would not be appropriate.

## CONCLUSION

In sum, the trial court did not err in modifying the child support order absent a substantial change in circumstances because the order arose from an agreement in an uncon-

tested proceeding. Also, the trial court, in its discretion, properly imputed income to Watson because he was voluntarily underemployed. Although the trial court did not abuse its discretion in modifying health insurance obligations, Watson may seek recourse for any clerical errors. Finally, neither party is awarded attorney fees.

We affirm.

KENNEDY and APPELWICK, JJ., concur.