
2017 DEC 11 PM 2: 01

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of

FANAYE ASHAGARI,

        Respondent,

and

ZELEKE KASSAHUN,

        Appellant.

No. 75496-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 11, 2017

TRICKEY, J. — This is Zeleke Kassahun's third appeal related to the dissolution of his marriage to Fanaye Ashagari. This court decided Kassahun's first appeal in March 2015. We subsequently resolved his second appeal challenging the trial court's dissolution order and findings on remand. Kassahun now appeals the trial court's denial of his motion to modify his child support and maintenance obligations.[1] Finding no error, we affirm.

## FACTS

This court previously stated the relevant underlying facts as follows:

> [Kassahun and Ashagari were married in January 1998.] The parties have three children. Ashagari did not return to work outside the home after their first child was born . . . .
>
> . . . .
>
> [The parties] purchased a taxicab license in 2000. In 2002, they acquired the Abyssinia Market . . . . Over the years they were able

---

[1] For clarity, we refer to the trial court that presided over the dissolution proceeding as the dissolution court, and to the trial court that presided over the modification proceeding as the modification court.

to save a large sum of money. In 2011, unbeknown to Ashagari, Kassahun withdrew $187,000 from the joint bank account and invested $180,000 in another taxicab license.

Kassahun paid himself a modest salary from his work at the Abyssinia Market. His tax returns reflected the paychecks he wrote to himself from the business account as well as his income from one of the taxicabs. He reported an income from the taxicab licenses of less than $1,000 a year. But at trial, Kassahun claimed to receive $1,000 each month per taxicab, paid in cash. He provided no documented proof of this income and stated that he does not keep records of the income.[2]

In 2011, Kassahun and Ashagari separated. The trial court concluded that Kassahun's gross monthly income was $13,750. The dissolution court awarded Ashagari $1,347.72 per month in child support and $5,000 per month in maintenance.

Kassahun appealed, and this court found that the dissolution court's explanation of its method for determining Kassahun's gross monthly income was unclear. This court remanded for further findings on the calculation of Kassahun's gross monthly income and recalculation of Kassahun's maintenance and support obligations, if necessary.

On remand, the dissolution court revised its calculation of Kassahun's monthly income to $12,750. The dissolution court also changed the method it used to compute Kassahun's taxes so that his tax liability decreased by approximately $1,000. This increased his net monthly income to $5,399.52. The dissolution court did not change Kassahun's $5,000 per month maintenance obligation, but adjusted his child support obligation to $1,696 per month.

---

[2] In re Marriage of Ashagari and Kassahun, noted at 186 Wn. App. 1033, 2015 WL 1307124, at *1-3, review denied, 184 Wn.2d 1012, 360 P.3d 818 (2015).

Following the dissolution trial, Kassahun filed a petition for modification of child support and maintenance, arguing that the order of child support worked a severe economic hardship on him and that there was a substantial change in circumstances meriting modification because his income had been significantly reduced.

The modification court heard evidence about Kassahun's financial situation over four days in May 2016. Kassahun's 2011 income tax return showed that he reported $36,000 in W-2 wages and $755 of business income from his taxicab licenses. After deductions and expenses, his reported taxable income for the year was $4,479.

Kassahun's 2013 income tax return showed that he reported $33,000 in W-2 wages, $4,240 in ordinary dividends, and $8,654 in business income from his taxicab licenses.[3] After his claimed expenses and deductions, his reported taxable income was $0.

Kassahun's 2014 income tax return showed that he reported $39,000 in W-2 wages, $3,357 in ordinary dividends, and $8,047 of business income from his taxicabs for a total of $50,404. After his claimed deductions and expenses, including alimony, Kassahun's claimed adjusted gross income was -$19,265.

Kassahun did not file his 2015 taxes. In August 2014, Kassahun filed a financial declaration, which stated that his total monthly net income was -1,226.50. He declared that his total gross income, consisting only of wages, was $3,824.50. He declared that his total monthly deductions were $5,051.00, including spousal

---

[3] Kassahun describes his claimed dividend as "moneys he had borrowed from his business which he could not repay." Br. of Appellant at 10.

maintenance payments.

In a financial declaration filed on May 9, 2016, Kassahun declared that his gross monthly income was $5,676.08. He declared that he had $2,787.90 in monthly deductions, for a monthly net income of $2,888.18.

At the modification trial, Kassahun testified that he had been forced to take out a $50,000 loan from Taketu Truneh to meet his support obligations and to pay his personal expenses and attorney fees. Kassahun said that he was able to pay his maintenance obligation until June 2015, when he was unable to borrow more money. But he also testified that he continued to borrow money from his cousin Aklilu Mekuria to pay his child support obligation.

After Kassahun stopped paying maintenance, Ashagari had to stop attending classes to find a job. Ashagari attempted to find full-time employment and was rejected. She eventually obtained a work study position at Shoreline Community College that pays $584.85 per month. At one point, Ashagari received public assistance in the form of food stamps. This assistance stopped after the State garnished $2,000 from Kassahun's personal account for maintenance.

After the garnishment, Kassahun opened a new business account into which he deposits his wages and taxicab income to avoid garnishment by the State. Kassahun paid his rent, taxicab insurance, utilities, and other expenses out of this new business account.

Kassahun testified that his taxicab licenses did not have any value because of changes in the industry, his inability to retain drivers, and his inability to lease the licenses. John Megow from the City of Seattle testified that the taxicab licenses

were still valuable and in high demand despite decreases in value over the prior two years.

Evidence presented at the modification trial showed that Kassahun made a profit from the Abyssinia Market and invested the earnings back into the business. Also, Kassahun wrote checks from his business account that he either cashed or used to pay for personal expenses. He used business credit cards for personal expenses and legal fees. Kassahun did not report these expenditures as income on his personal income tax returns.[4] Further, at trial Kassahun disclosed for the first time that he had a Visa credit card through BMW. He used this card for personal expenses.

After filing his petition for modification, Kassahun moved for an order to show cause regarding language in the dissolution decree that made his maintenance obligation "'non-modifiable.'"[5] The dissolution court struck the language because it "was not part of the court's oral ruling and is not a ruling the court has discretion to make."[6] Kassahun has not appealed that order.

In its final order and findings, the modification court did not change Kassahun's monthly child support obligation.

Kassahun appeals.

---

[4] See, e.g., Ex. 67 (2012 personal income tax return); Ex. 69 (2012 personal income tax return, listing an ordinary dividend); Ex. 74 (2013 personal income tax return); Ex. 77 (2014 personal income tax return, listing an ordinary dividend). After the parties' dissolution trial, Kassahun filed amendments to his 2012 and 2013 personal income tax returns to decrease the retained earnings listed in his corporate tax returns.
[5] Clerk's Papers (CP) at 160-61.
[6] CP at 163.

## ANALYSIS

### Striking of Non-Modification Language

Kassahun argues that the dissolution court erred when it failed to reconsider the amount and duration of Ashagari's maintenance award after the "non-modification" language was stricken from the dissolution decree. Because the dissolution court reconsidered Ashagari's maintenance award on remand after it struck the non-modification language, we disagree.

Unless a separation contract so provides, a maintenance or support decree may be modified only upon a showing of a substantial change in circumstances. RCW 26.09.170(1)(b); RCW 26.09.070(7).

In In re Marriage of Short, the trial court ordered the husband to pay the wife $750 per month in maintenance payments for 12 months. 71 Wn. App. 426, 433, 859 P.2d 636 (1993), aff'd in part, rev'd in part, 125 Wn.2d 865, 876, 890 P.2d 12 (1995). The trial court gave the husband "leave to pay this maintenance in one accelerated lump sum if he so chose," which he did. Short, 71 Wn. App. at 433. The trial court then "determined that the spousal maintenance award had been fully, finally and completely satisfied and provided in the decree that the maintenance award would be nonmodifiable by either party for any reason." Short, 71 Wn. App. at 433.

The Court of Appeals reversed, and the Supreme Court affirmed in relevant part. In re Marriage of Short, 125 Wn.2d 865, 876, 890 P.2d 12 (1995). The Supreme Court held that "whenever a nonmodifiable maintenance award provision is stricken from a decree of dissolution, the amount and duration of the

6

maintenance award must be reconsidered" as a matter of law. Short, 125 Wn.2d at 876.

Here, the dissolution court entered the dissolution decree, which included the "non-modifiable" language, on November 13, 2013.[7] Kassahun filed his notice of appeal on December 12, 2013. Kassahun filed his motion for an order to show cause on November 14, 2014. On February 3, 2015, the dissolution court ruled that the language should be stricken. A year later, following Kassahun's first appeal in this case, the dissolution court entered its order and findings on remand on March 17, 2016. It declined to alter its determination that Kassahun should pay $5,000 per month in maintenance.

The dissolution court's maintenance award has been reconsidered since it struck the "non-modifiable" language. Following Kassahun's first appeal in this case, this court directed the dissolution court to recalculate Kassahun's income and revisit his child support and maintenance obligations, if necessary. The dissolution court recalculated Kassahun's income, and explicitly declined to modify its maintenance award. Thus, the dissolution court reconsidered its maintenance award following its striking of the "non-modifiable" language in the dissolution decree.

## Substantial Change in Circumstances

Kassahun argues that the modification court abused its discretion when it found that there had been no substantial change in circumstances meriting modification of his support obligations. Specifically, he argues that the modification

---

[7] Ex. 23.

court's findings of fact were not supported by substantial evidence and that it erred when it did not explicitly calculate his current gross monthly income.

*Findings of Fact*

Kassahun argues that several of the modification court's findings of fact were not supported by substantial evidence. We examine each of Kassahun's challenges in turn.

"Where the trial court has weighed the evidence, the reviewing court's role is simply to determine whether substantial evidence supports the findings of fact and, if so, whether the findings in turn support the trial court's conclusions of law." In re Marriage of Wilson, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." In re Marriage of Hall, 103 Wn.2d 236, 246, 692 P.2d 175 (1984).

"An appellate court should 'not substitute [its] judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'" Wilson, 165 Wn. App. at 340 (alteration in original) (quoting In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)).

First, Kassahun contends that evidence at the modification trial was insufficient to show that he has continued to take approximately $11,000 from his business to pay for personal expenses, as found by the dissolution court. Assuming that Kassahun is challenging the modification court's finding that he

"routinely uses his business account for personal expenses,"[8] this finding is supported by substantial evidence.

At trial, Kassahun testified that he used business funds and business credit cards to pay for personal expenses.[9] Although he claimed that he disclosed these amounts when he claimed an ordinary dividend of $3,357 on his 2014 personal income tax return, he testified to payments from his business account to pay for personal expenses that exceeded this claimed dividend in 2014.[10]

Kassahun stated that he stopped using business funds for personal expenses in late 2015 or early 2016, and that he paid personal expenses out of the new business account he opened to avoid garnishment. But his argument largely relies on his self-serving testimony. Further, he testified that he used cash from the business without keeping a ledger and that his statements for his new business account did not itemize where the deposits into it originated. The modification court did not find Kassahun's testimony at trial credible, which this court will not disturb on appeal.[11] Therefore, we conclude that the modification

---

[8] CP at 456.

[9] See, e.g., RP (May 18, 2016) at 422-423 (describing checks written from business account to pay for personal credit card); RP (May 17, 2016) at 279-80 (use of Costco American Express credit card to pay attorney fees).

[10] See Ex. 77; cf. Ex. 76 (corporate tax return lists value as cash distribution, not dividend); RP (May 18, 2016) at 422-23; see, e.g., Ex. 61 (check for $1,200 to himself in January, check for $1,200 to pay personal credit card in January, check for $340 to pay refrigerator technician in February, check for $1,200 to pay personal credit card in February, check for $1,200 to pay personal credit card in March).

[11] Kassahun also challenges Ashagari's statements during closing argument at the modification trial that Kassahun used funds from his business accounts to pay for personal expenses. Ashagari's statements during closing argument were based on the evidence presented at trial, Kassahun did not object to them, and they are not a finding of fact by the modification court. We reject Kassahun's challenge.

court's finding that Kassahun uses business accounts for personal expenses is supported by substantial evidence.

Second, Kassahun argues that substantial evidence does not support the modification court's finding that changes in the car-for-hire industry were known at the time of trial and evidence of those changes could have been offered. At the modification trial, Emanuel Jonjanel, a taxicab driver, testified that he was aware of ride-sharing services such as Uber and Lyft at least three years prior, and had been solicited to drive for them. Jonjanel's testimony is sufficient to establish that it was foreseeable in 2013, the year of the dissolution trial, that ride-sharing services could have an impact on the taxicab industry. Thus, we conclude that the trial court's finding that the parties could have offered evidence about how market forces could impact the taxicab industry at the dissolution trial was supported by substantial evidence.

Third, Kassahun argues that the trial court's finding in its order and findings on remand that he did not require "'additional loans to meet his child support and maintenance obligations'" was not supported by substantial evidence.[12] The trial court's order and findings on remand is not at issue in the present appeal.[13] We decline to address this argument. RAP 10.3(a)(4).

---

[12] Br. of Appellant's at 19 (quoting CP at 1326).

[13] See Notice of Appeal (appealing final order and findings on petition to modify child support and maintenance order, entered on May 26, 2016, and the order denying respondent's motion for reconsideration, entered on June 7, 2016); see also In re Marriage of Ashagari and Kassahun, noted at 199 Wn. App. 1034, 2017 WL 2634197.

*Substantial Change in Circumstances*

Kassahun argues that the trial court abused its discretion when it did not calculate his current gross monthly income to determine whether a substantial change in circumstances had occurred. Because the trial court properly determined that Kassahun did not demonstrate that a substantial change of circumstances had occurred based on the evidence presented at trial, we disagree.

Generally, "the provisions of any decree respecting maintenance or support may be modified . . . only upon a showing of a substantial change in circumstances." RCW 26.09.170(1)(b).

In a petition to modify a maintenance award or child support obligation, the moving party must show a substantial change in circumstances that the parties did not contemplate at the time of the dissolution decree. In re Marriage of Spreen, 107 Wn. App. 341, 346, 28 P.3d 769 (2001); In re Marriage of Scanlon, 109 Wn. App. 167, 173, 34 P.3d 877 (2001). "The phrase 'change in circumstances' refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse." In re Marriage of Ochsner, 47 Wn. App. 520, 524, 736 P.2d 292 (1987).

A party's support obligation must be based on the current circumstances of the parties. Scanlon, 109 Wn. App. at 178. But generally a party may not argue that a material change of circumstances has occurred if the underlying condition or situation could have been brought to the attention of the court at a prior hearing. Heuchan v. Heuchan, 38 Wn.2d 207, 214-15, 228 P.2d 470 (1951).

11

"All income and resources of each parent's household shall be disclosed and considered by the court when the court determines the child support obligation of each parent." RCW 26.19.071(1). Offered income and deductions must be verified by tax returns for the prior two years and current paystubs, and "[o]ther sufficient verification" is required to verify "income and deductions which do not appear on tax returns or paystubs." RCW 26.19.071(2). A court may not "essentially guess[]" a party's income if does not have either "statutorily mandated verification . . . [or] adequate independent records to determine it." In re Marriage of Bucklin, 70 Wn. App. 837, 841, 855 P.2d 1197 (1993).

Absent an abuse of discretion, this court will not reverse a trial court's decision regarding whether a change in circumstances justifies a modification. Spreen, 107 Wn. App. at 346. A trial court abuses its discretion if its decision "is manifestly unreasonable, based on untenable grounds, or granted for untenable reasons." In re Marriage of Schumacher, 100 Wn. App. 208, 211, 997 P.2d 399 (2000).

Here, Kassahun bore the burden at the modification trial of proving that a substantial change in circumstances had occurred. He has not carried this burden.

The modification court considered the tax returns Kassahun submitted, which showed that he reported taxable income of $4,479 in 2011 and $0 in 2013, and an adjusted gross income of -$19,265 with $0 of taxable income in 2014. Kassahun declared that he had a net monthly income of -$1,226.50 in August 2014 and of $2,888.18 in May 2016. Kassahun testified about his income, reliance on loans, and the value of his taxicab licenses.

12

The modification court noted that much of Kassahun's testimony and argument focused on his allegation that the "trial court wrongly attributed to him more income than he actually has."[14]   The modification court found that Kassahun's testimony and evidence was not credible, and its findings closely paralleled those of the dissolution court in its order and findings on remand.   In light of its consideration of Kassahun's testimony and documentary evidence regarding the alleged substantial change in circumstances, the modification court did not abuse its discretion when it determined that Kassahun had not carried his burden of demonstrating a substantial change.[15]

Kassahun relies on In re Marriage of Bucklin to argue that the modification court was required to calculate his present income in order to determine whether a substantial change in circumstances had occurred.  70 Wn. App. 837, 855 P.2d 1197 (1993).  In Bucklin, Russell Bucklin argued that a substantial change in circumstances had occurred because one of his real estate holdings had been destroyed by a hurricane.  70 Wn. App. at 839.  Bucklin's evidence of his current income was based on his own testimony and handwritten notes.  Bucklin, 70 Wn. App. at 839.  The trial court explicitly found that Bucklin had neither complied with the statutory requirements for verifying his income nor presented adequate independent records to determine it, but still granted his motion to modify his child

---

[14] CP at 456.
[15] Kassahun also argues that his claimed loss of income from his taxicab licenses constituted a substantial change in circumstances.  Br. of Appellant at 26-27.  Because we have concluded that the modification court's finding that the changes in the taxicab industry were known at the time of trial, this alleged substantial change in circumstances was not unforeseen at the time of the original award and is not a valid basis for modification. See Spreen, 107 Wn. App. at 346; Scanlon, 109 Wn. App. at 173.

support obligation. Bucklin, 70 Wn. App. at 839, 841. The Court of Appeals reversed the trial court's order reducing Bucklin's child support obligation, holding that the trial court abused its discretion by granting his motion to modify after "essentially guessing" at his income. Bucklin, 70 Wn. App. at 841-42.

Kassahun's reliance on Bucklin is misplaced. Bucklin held that a trial court abuses its discretion when it grants a party's motion to modify its child support obligation without having any valid evidentiary basis for doing so. Bucklin did not hold that a modification court had to provide an explicit calculation of a party's current gross monthly income before denying a motion to modify. Moreover, here, the modification court was not obligated to attempt to calculate Kassahun's income because he did not submit credible evidence of his current income or of any substantial change in circumstances.

*Challenges to Dissolution Court's Findings*

Kassahun argues that there has been a substantial change in circumstances because the record of the modification trial does not support several of the dissolution court's findings. Specifically, he argues that the record of the modification trial does not show that he was able to continue to save money, had access to substantial amounts of cash, or that he had expenses of approximately $8,700, as found by the dissolution court.

The moving party in a modification proceeding bears the burden of proving a substantial change in circumstances that was unforeseen at the time of the original award. Spreen, 107 Wn. App. at 346; Scanlon, 109 Wn. App. at 173.

14

Here, Kassahun is arguing that he no longer has the saving ability, access to cash, or expenses that the dissolution court found. Thus, he bore the burden of proving a substantial change in circumstances in each of these categories at the modification trial. He has not offered documentary evidence of any such changes.[16] His argument that the modification trial record does not support the dissolution court's findings is unpersuasive, and we conclude that he has failed to carry his burden.

### Severe Economic Hardship

Kassahun argues that, even if no substantial change in circumstances has occurred, his child support obligation works a severe economic hardship on him and must be modified. Because the record does not show that Kassahun's child support obligation works a severe economic hardship on him, we disagree.

"An order of child support may be modified one year or more after it has been entered without a showing of substantially changed circumstances: (a) If the order in practice works a severe economic hardship on either party or the child." RCW 26.09.170(6)(a).

This court "reviews a modification of child support for abuse of discretion." Schumacher, 100 Wn. App. at 211.

Here, Kassahun relies on his arguments that the modification court could not determine whether a substantial change in circumstances had occurred because it did not explicitly calculate his gross monthly income and that he was

---

[16] Kassahun cites his current financial declaration, filed on May 10, 2016, to argue that the modification court could not have reached a figure of $8,700. But the modification court did not make a specific finding regarding Kassahun's expenses or income. Kassahun's argument is insufficient to demonstrate a substantial change in circumstances.

reliant on loans from third parties to meet his obligations. As discussed above, the modification court did not abuse its discretion when it did not explicitly calculate Kassahun's gross monthly income. Also, the modification court concluded that Kassahun's testimony about his reliance on loans to meet his support obligations was not credible, and the documentary evidence he submitted did not support his claims.[17]

Moreover, Kassahun stopped paying maintenance in July 2015. He opened a separate business account to shelter his personal savings from garnishment, both of which substantially reduced the burden on his finances. Therefore, the modification court did not abuse its discretion when it determined that the record does not show that Kassahun's child support obligation works a severe economic hardship on him.

### Inclusion of Ashagari's Actual Income

Kassahun argues that a substantial change in circumstances has occurred because Ashagari now has actual income.[18] Because Ashagari's current actual income does not constitute a substantial change in circumstances, we disagree.

A trial court's failure to "include all sources of income not excluded by statute" when calculating a parent's monthly gross income is reversible error. Bucklin, 70 Wn. App. at 840. In a modification trial, the court may modify an award

---

[17] See, e.g., Ex. 59 (Bank of America checking account showing Kassahun's purchases at Museum of Flight, Lithia BMW of Seattle, and Nordstrom's after he stopped paying maintenance).

[18] It is unclear if Kassahun is challenging the original dissolution court's decision to calculate Ashagari's income based on her receipt of $5,000 per month in maintenance, rather than her actual income. As discussed above, the dissolution court's order and findings on remand are not at issue in the current appeal. We disregard Kassahun's challenge to the dissolution court's calculation of the child support obligation.

of maintenance or child support if the moving party proves that there has been an unforeseen substantial change in circumstances. Spreen, 107 Wn. App. at 346; Scanlon, 109 Wn. App. at 173-74.

This court will not reverse a trial court's decision whether a change in circumstances justifies a modification absent an abuse of discretion. Spreen, 107 Wn. App. at 346; Schumacher, 100 Wn. App. at 211.

Here, the dissolution court awarded Ashagari maintenance so that she could obtain training that would allow her to secure a job that paid more than minimum wage, and included her maintenance award as income when it calculated its child support award. Kassahun stopped paying maintenance in July 2015. Since then, Ashagari has held a work study position at Shoreline Community College that pays $584.85 per month.

Kassahun has not established that Ashagari's new income stream is a substantial change in circumstances that merits modification of his support obligation. Although there has been a change in that she has actual income, it is by no means significant. Moreover, Ashagari found a job because of Kassahun's failure to meet his maintenance obligation. Thus, we reject Kassahun's argument and conclude that the trial court did not err when it declined to modify Kassahun's support obligation based on Ashagari's new actual income.

<u>Voluntary Underemployment and Imputation of Income</u>

Kassahun argues that the trial court erred by not imputing income to Ashagari based on its finding that she was not voluntarily underemployed.

First, Kassahun argues that the modification court's findings that Ashagari was unable to afford classes after he stopped paying maintenance and that his cessation of maintenance payments has delayed Ashagari's progress toward financial independence were not supported by substantial evidence. We disagree.

"Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." Hall, 103 Wn.2d at 246.

As discussed above, Ashagari testified that she had to leave school after Kassahun stopped paying maintenance because she had to find a job to support their children. Even with her part-time job and child support payments from Kassahun, Ashagari's income was so low that she had to rely on public assistance in the form of food stamps. Moreover, she stopped receiving food stamps because the State was able to collect $2,000 from Kassahun for his maintenance obligation, not because she was able to find gainful employment. Thus, evidence at the modification trial showed that Ashagari was forced to abandon her education because of Kassahun's actions, and that her need for support reached the point where she was reliant on food stamps. Therefore, both of the modification court's findings of fact are supported by substantial evidence.

Second, Kassahun argues that the trial court abused its discretion when it determined that Ashagari is not voluntarily underemployed and declined to impute income to her.

"The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that

parent's work history, education, health, and age, or any other relevant factors." RCW 26.19.071(6). "A parent may not avoid his or her child support obligation by remaining voluntarily unemployed or underemployed." In re Marriage of Goodell, 130 Wn. App. 381, 389, 122 P.3d 929 (2005) (citing RCW 26.19.071(6)).

A court's decision on whether to impute income to a voluntarily underemployed spouse is reviewed for abuse of discretion. In re Marriage of Wright, 78 Wn. App. 230, 234, 896 P.2d 735 (1995).

As discussed above, after Kassahun stopped paying his maintenance obligation, Ashagari had to stop attending classes to find a job and at one point was reliant on public assistance. Taken together, this evidence amply supports the modification court's conclusion that Ashagari was not voluntarily underemployed. Therefore, we conclude that the modification court did not abuse its discretion by finding that Ashagari is not voluntarily underemployed.

Kassahun, relying primarily on Ashagari's testimony, argues that Ashagari was voluntarily underemployed because she could have obtained financial aid or looked for more employment, is proficient in English, had other relevant work history, and could have applied herself more in her English as a second language classes. Kassahun's arguments are challenges to the trial court's weighing of the evidence that this court will not review on appeal. See Wilson, 165 Wn. App. at 340. We reject this line of argument.

Modification Court Bias

Kassahun argues that the modification court's decision is improperly based on bias or consideration of his marital misconduct. Because Kassahun has not cited evidence demonstrating that the modification court was biased, we disagree.

There is a presumption that a trial judge properly discharged his or her official duties without bias or prejudice. Jones v. Halvorson-Berg, 69 Wn. App. 117, 127, 847 P.2d 945 (1993). The party seeking to overcome that presumption must provide specific facts establishing bias. See State v. Post, 118 Wn.2d 596, 619, 619 n.9, 826 P.2d 172, as amended by 837 P.2d 599 (1992).

Kassahun argues that the modification court improperly considered the dissolution court's determination that he had engaged in domestic violence. This would have been improper because a court may not consider a party's misconduct when constructing a maintenance award. RCW 26.09.090(1); In re Marriage of Muhammad, 153 Wn.2d 795, 108 P.3d 779 (2005). But Kassahun does not cite any statement of the modification court that indicated that it improperly considered his marital fault. Accordingly, we reject this argument.

Kassahun challenges various decisions of the modification court, asserting that "[n]o impartial trier of fact could reach these same conclusions based on the evidence presented in this proceeding."[19] First, he repeats his argument that the modification court abused its discretion by not explicitly calculating his current gross monthly income. This argument is unpersuasive for the reasons described above.

---

[19] Br. of Appellant at 34.

20

Second, he argues that the modification court exhibited bias when it criticized him for placing "a higher priority on maintaining his comfortable life style [sic] than fulfilling his obligations" and not moderating his discretionary spending. Kassahun has not cited legal authority in support of his contention that the evaluation of the evidence presented at trial demonstrates bias, and relies on his self-serving testimony that his spending decisions were necessary. Further, the facts cited by Kassahun support the modification court's conclusions and are insufficient to overcome the presumption that the court did not act with bias toward him. We reject his challenges.

Third, Kassahun argues that the modification court exhibited bias when it examined his expenditures and the sources of his funds while it did not question Ashagari's undocumented withdrawals of cash from her child support and maintenance payments. He does not cite legal authority to support his argument that this demonstrates bias or that Ashagari was required to provide an accounting of her spending of support payments as the recipient. Further, the present appeal concerns a modification trial initiated by Kassahun. His own financial status is at issue in this proceeding, not Ashagari's use of child support and maintenance funds. We reject his argument.

Fourth, Kassahun argues that the modification court exhibited bias when it determined that his testimony and the testimony of his Certified Public Accountant (CPA) regarding his use of cash from the business without documentation was not credible. In support of his argument, he cites his own testimony and that of his CPA, and the tax returns that they prepared. Kassahun's challenges are in

essence a challenge to the modification court's factual and credibility determinations based on his testimony and that of his CPA. This court does not reweigh the evidence or judge witness credibility on appeal. Wilson, 165 Wn. App. at 340. We reject his argument.

In his reply brief, Kassahun argues that the modification court's judge was inherently biased in favor of women, citing the judge's statement that she had been a "lifelong advocate for women [and] children" in her online biographical information.[20] He also argues that Ashagari's counsel improperly alerted the court that their client was victim of domestic violence because they introduced themselves as attorneys for the Northwest Justice Project (NJP). Both of these arguments are raised for the first time in Kassauhn's reply brief, and we decline to address them. RAP 10.3(c).

Kassahun also requested that on remand this court direct the superior court to assign this case to a new judge. Because no remand is necessary in this case, we do not reach this issue.

### Attorney Fees on Appeal

Ashagari requests that this court order Kassahun to pay her reasonable attorney fees and costs. After considering the relative financial positions of the parties, we conclude that Ashagari is entitled to recover her reasonable attorney fees.

---

[20] Kassahun analogizes the judge's statement to a situation of "representing a black person before a white judge" who stated that he or she was a "lifelong advocate for White Citizens' Councils and traditional Southern values." Reply Br. of Appellant at 21; see http://www.kingcounty.gov/~/media/courts/superior-court/docs/judges/ramseyer-bio.ashx?la=en.

In a dissolution proceeding, the court may order a party to pay the reasonable attorney fees and costs of the other party after considering the financial resources of both parties. RCW 26.09.140. Upon an appeal, the appellate court has the discretion to order a party to pay the other party's reasonable attorney fees and appellate costs. RCW 26.09.140.

Reasonable attorney fees are not necessarily based on the amount of fees actually incurred by a litigant. See Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 148-49, 859 P.2d 1210 (1993). Usually, Washington courts will use a lodestar, which is calculated by multiplying the number of hours reasonably expended to obtain the result by a reasonable hourly rate. Bowers v. TransAmerica, 100 Wn.2d 581, 594, 675 P.2d 193 (1983). Whether a litigant is represented by a nonprofit legal aid program or a private practitioner is irrelevant to the issue of whether a successful litigant is entitled to reasonable attorney fees. See Tofte v. Dep't of Soc. & Health Servs., 85 Wn.2d 161, 165, 531 P.2d 808 (1975).

Prior to the present appeal, Ashagari and Kassahun have gone through a trial, one full appeal, a trial on remand, a modification trial, and a second appeal of the dissolution court's order and findings on remand. Kassahun has initiated the majority of these proceedings. On remand, the dissolution court concluded that its calculation that Kassahun has a gross monthly income of $12,750 is a conservative estimate.[21] In this appeal, he has not demonstrated that a substantial change in circumstances has occurred that warrants modification. By contrast,

---

[21] This court has affirmed the dissolution court's calculation in Kassahun's other appeal to this court. See In re Marriage of Ashagari and Kassahun, noted at 199 Wn. App. 1034, 2017 WL 2634197.

23

Ashagari has not received maintenance payments from Kassahun since July 2015, has a current gross monthly income of $584.85, and at one point was reliant on food stamps.

Ashagari has been represented by NJP and received legal services free of charge. NJP is publicly funded and bears the costs of representing its clients. NJP is permitted by the Legal Services Corporation and the Office of Civil Legal Aid to pursue attorney fees in cases where they are authorized by statute or case law. Ashagari has agreed to assign any attorney fees recovered to NJP.

In light of the relative financial resources of the parties, we exercise our discretion to award reasonable attorney fees and costs to Ashagari under RCW 26.09.140.

Kassahun argues that this court is bound by the modification court's conclusion that he should not be required to pay attorney fees so that he could focus on fulfilling his support obligations. He has not cited legal authority in support of his assertion that this court is bound by the trial court's decision to not award fees when deciding whether to award attorney fees and costs on appeal. We reject his argument.

Affirmed.

Trickey, J

WE CONCUR:

Cox, J.

24