[No. 3-39639-1.   Division One.   December 15, 1969.]
Panel 1

THELMA EIDE, *Respondent,* v. NELS J. EIDE, *Appellant.*

*John F. Dore,* for appellant.

*Walsh & Margolis, Roger C. Walsh, Moriarty, Olson, Campbell & Brindle,* and *Alec W. Brindle,* for respondent.

SWANSON, J.—Nels J. Eide, a certified sea captain, found his matrimonial ship breaking up during the seventh year of his marriage to Thelma Eide. She was awarded a divorce and about one-third of all the property of the parties. Captain Eide says she received too much and appeals.

Thelma Eide says the appeal ought to be dismissed or summarily affirmed because the Captain tampered with the exhibits. After initially refusing to certify the statement of facts because appellant altered exhibits, and then being directed to do so by a writ of mandamus issued by the Supreme Court, the trial judge certified the reporter's transcript of the trial proceedings but refused to certify any exhibits which were in appellant's handwriting. None of the 39 exhibits were certified and are not a part of the record here.

Appellant's 12 assignments of error question primarily the correctness of the division of the property and the award of attorney fees and temporary alimony pending appeal.

The parties were married in 1958. She was a widow 46 years of age and the mother of two children, one of whom was married. She had property worth approximately $17,000. He was 54 years of age and had a $24,000 equity in the Latona Building and a $54,000 equity in the LaVanch Apartments. These buildings were found to be his separate property and were awarded to him. Seven thousand dollars of other assets made his approximate net worth at the time of the marriage $84,000. After the marriage, she quit her job, and they worked together to maintain and improve the LaVanch Apartments.

The main thrust of appellant's argument of inequity in the division of the property centers around the contention that the court erred in its characterization of five

properties[1] purchased in 1962 and the Riverton View Apartments purchased in 1963 as community rather than separate, and in overevaluating the property awarded to him and underevaluating the property awarded to her.

The respondent wife received property valued by the court totaling $85,600.26, including the equity in the Riverton Apartments valued at $53,835. The appellant husband was awarded the property he had before marriage and the five properties referred to above acquired after marriage. His total award was valued at $203,848.46. Appellant says the trial court erred in finding there was no specific evidence that the five properties purchased in 1962 were purchased with separate funds, so that said property was community property. Appellant argues that the exhibits consisting of books and records clearly showed that appellant's separate income went into the purchase of these properties. He also claims the record of income and disbursements of the Riverton View Apartments (exhibits 1, 21, 29) shows gross potential annual income of $37,224. Applying the formula used by respondent's appraiser of eight times the income, the Captain says, would make the property worth substantially more than the value given it by the trial court. This argument cannot be considered. None of the exhibits were certified as a part of the record and are not before us.

A careful review of the statement of facts discloses substantial evidence supporting the trial court's determination regarding the separate and community nature of the property of the parties. Also, the trial court's determination of value of the various properties is well within the range of the evidence presented on value. As stated in *Mayo v. Mayo*, 75 Wn.2d 36, 40, 448 P.2d 926 (1968):

This court cannot substitute its conclusions regarding the facts for those of the trial court when the findings are amply sustained by the proofs. Even if we were of the

[1]The five properties are the Martha Lake property valued at $5,000; the Ryner property valued at $16,500; the Huff property valued at $9,100; the North Bend property valued at $10,586; and the city lots valued at $2,100.

opinion that the trial court should have resolved the factual disputes differently, this court could not supplant the trial court's findings since there was substantial evidence to justify its determination. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *Bennett Veneer Factors, Inc. v. Brewer,* 73 Wn.2d 849, 441 P.2d 128 (1968).

■ Even though the source of acquisition of property is a significant factor in a division of property, as appellant contends, it is but one factor and is not to be used to the exclusion of all other considerations. *Merkel v. Merkel,* 39 Wn.2d 102, 234 P.2d 857 (1951).

In *Lynch v. Lynch,* 38 Wn.2d 437, 229 P.2d 885 (1951), where the bulk of the property was owned by the wife and was awarded to her, the husband was given enough to recognize the value of his services to the community and the value of the improvements made by his efforts.

Here, the trial court recognized in its findings the value of the wife's services to the community and the improvements to the husband's separate property. Finding of fact 8 states in part:

> [T]he Court further finds that plaintiff's efforts at the LaVanch Apartments had something to do with permitting both parties to raise the rents and increase the revenue of said apartments.

Substantial evidence in the record supports this finding.

As stated in *Worthington v. Worthington,* 73 Wn.2d 759, 768, 440 P.2d 478 (1968):

> The ultimate question is whether the final division of the property is fair, just, and equitable. [Citing cases.] It is only a manifest abuse of discretion which will warrant this court in substituting its judgment for that of the trial court in the disposition of property in a divorce action. [Citing cases.]
>
> These rules make clear that the characterization of the property is not necessarily controlling. [Citing cases.]

Even if the trial court erred in its characterization of the property as "community" rather than "separate," this is not necessarily controlling, for the court has jurisdiction to make equitable division of both separate and community

property. RCW 26.08.110;[2] *Huff v. Huff*, 68 Wn.2d 501, 413 P.2d 818 (1966); *Worthington v. Worthington, supra.* The factors to be considered by the trial court in exercising its discretion in the division of property, in addition to the cardinal rule that the division be just and equitable, were set out in *DeRuwe v. DeRuwe*, 72 Wn.2d 404, 408, 433 P.2d 209 (1967):

> First, the court must consider the necessities of the wife and the financial ability of the husband. *Hogberg v. Hogberg*, 64 Wn.2d 617, 393 P.2d 291 (1964). Then, it should take into consideration the age, health, education and employment history of the parties and their children, and the future earning prospects of all of them. The court should, likewise, give thought to the sources and dates of acquisition of all properties accumulated by the parties during the marriage and what properties each brought into or contributed to the community property, along with the amounts and kinds of property left to be divided at the divorce. Even when regard is had for the fault of the parties and the wrong inflicted by the one upon the other, it is the economic condition in which the decree will leave the parties that engenders the paramount concern in providing for child support and alimony and in making a property division. *Stacy v. Stacy*, 68 Wn.2d 573, 414 P.2d 791 (1966).

Are there inequities fostered by the decree dividing the property in this case? We think not. An award of 30 per cent of the total value of all of the assets to the respondent and 70 per cent to the appellant—even if we assume that a substantial portion of the assets awarded to the respondent are traceable to the property brought into the marriage by the appellant husband—is manifestly fair and equitable

---

[2]"26.08.110 Decree of divorce or annulment—Finality—Restraining orders. . . . If the court determines that either party, or both, is entitled to a divorce or annulment, judgment shall be entered accordingly, granting the party in whose favor the court decides a decree of full and complete divorce or annulment, and making such disposition of the property of the parties, either community or separate, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they will be left by such divorce or annulment, to the party through whom the property was acquired, . . ."

when the wife through her labors contributed valuable services to the community, helped improve the husband's separate property and increase its value, and brought $17,000 into the marriage. That the trial court properly took into account the condition in which the decree would leave her is apparent from this statement in its oral opinion:

> She has had no training for any particular occupation. It is true that she has been a waitress. She has been a cashier. But people who can do that kind of work are numerous, and except in times of high employment, which is now, of course, I would think that she would have more difficulty in getting that kind of a job than someone twenty or twenty-five years younger. Also, as we get older that kind of work becomes much more difficult to be on your feet all of the time.
> But I do think that some thought has to be given here to her security for the future and the fact that at her present age she is much less likely to remarry than she was at the age when she did marry Mr. Eide.

The trial court did not abuse its discretion in making this division of the property.

■ Appellant assigns error to the trial court's award of attorney fees and argues that a wife is not entitled to free litigation where she, herself, has assets and income sufficient to pay her attorney. The application of this rule depends in some degree upon the nature of the division of the property. *Johnson v. Johnson,* 53 Wn.2d 107, 330 P.2d 1075 (1958); *Wills v. Wills,* 50 Wn.2d 439, 312 P.2d 661 (1957). Here, it clearly appears the trial court found that additional legal services were required because of the intransigence of the appellant. Finding of fact 16 states as follows:

> Defendant, by his recalcitrant, foot-dragging, obstructionist attitude, increased the cost of this litigation to plaintiff, and plaintiff should have judgment against defendant in the reasonable sum of $3,000.00 toward attorney fees incurred by her in this action, plus her costs of suit.

This finding has ample support in the record. The award of $2,500 attorney fees on appeal is likewise supported by the

record. Appellant's conduct in tampering with the exhibits made additional legal services necessary. Such award was therefore proper. *Abel v. Abel,* 47 Wn.2d 816, 289 P.2d 724 (1955). Error was assigned to the allowance of $300 per month alimony pending the appeal. The appellant did not supersede the judgment, and the respondent has had the benefit of all of the property awarded to her. An award of $300 per month alimony pending appeal cannot be justified in such circumstances.

Because of our disposition of the case, we do not reach the questions raised by the motions for dismissal or summary affirmance.

In view of the considerable cash payments imposed upon the appellant by the decree, no additional award of attorney fees to either party will be made by this court.

The March 7, 1967, order of the trial court awarding alimony pending appeal is vacated. In all other respects the decree is affirmed.

JAMES, C. J., and FARRIS, J., concur.