# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of: )
)
ARADHNA FORREST (f/k/a Luthra), )
)
      Respondent, )
)
    and )
)
VIKAS LUTHRA, )
)
      Appellant. )
_____ )

DIVISION ONE

No. 71018-4-I

UNPUBLISHED OPINION

FILED: November 17, 2014

DWYER, J — Vikas Luthra appeals from an amended final parenting plan. He contends that the trial court erred in modifying the parenting plan without first finding a substantial change, by awarding attorney fees for intransigence, and by accepting a stipulation entered into by his attorney and conducting proceedings consistent therewith. Because Luthra fails to demonstrate that the trial court erred or abused its discretion, we affirm.

I

The procedural history of this parenting dispute is convoluted and is summarized here only to the extent necessary to address the issues on appeal. Vikas Luthra and Aradhna Forrest dissolved their marriage in 2010. The couple have one son, who is currently 10.

Following a five-day trial, the court entered a final parenting plan on July 9, 2010. The court found that Luthra suffers from "[severe obsessive-compulsive disorder (OCD)], which is a lifelong condition that cannot be cured" and that the condition "has had a profound impact on the family." The court directed Luthra to

> immediately engage in intensive, home-based therapy for his OCD, which is likely to include both exposure response prevention and cognitive behavioral therapy, as recommended by Dr. Hastings. This therapy should be undertaken with a therapist highly experienced in intensive OCD treatment.

The parenting plan included restrictions based on Luthra's OCD and abusive use of conflict. See RCW 26.09.191(3). The court conditioned reinstatement of Luthra's mid-week residential visits on compliance with the treatment order.

Luthra did not appeal the trial court's findings or the restrictions based on statutory factors. In In re Marriage of Luthra, noted at 165 Wn. App. 1032 (2012), this court affirmed the trial court's subsequent order enforcing Luthra's compliance with the final parenting plan and reversed an order imposing additional restrictions on his contact with Forrest.

On May 22, 2013, Luthra moved to reinstate his mid-week residential visits. Following a hearing on June 5, 2013, the court found that Luthra had failed to comply with the court's treatment requirements and denied the motion. The court also denied Luthra's request to take his son on a three-week vacation to India.

During the course of the hearing, the court observed that the parties might benefit from clarification or modification of the parenting plan in "areas of conflict between the parents." Counsel for both parties stipulated to the proposal. The court and counsel then agreed on the procedure to follow and on a list of specific issues that the court could consider. The court incorporated the list into its June 5, 2013 order.

After considering the parties' submissions, the court entered an amended parenting plan on September 9, 2013. Forrest filed a timely motion for reconsideration on the issue of dispute resolution, which the trial court granted on October 21, 2013. The court also awarded Forrest attorney fees based on Luthra's intransigence in pursuing his motion to reinstate mid-week residential visits.

II

Luthra contends that the amended parenting plan constitutes an improper modification because the trial court failed to conduct an "adequate cause" hearing or enter a finding of a "substantial change." See RCW 26.09.270, .260. But the amended parenting plan was based on stipulations and agreements by both parties at the June 5, 2013 hearing. See In re Marriage of Christel & Blanchard, 101 Wn. App. 13, 22, 1 P.3d 600 (2000) (permanent parenting plan may be changed by petition to modify, temporary order, and by agreement); RCW 26.09.260(2)(a).

-3-

Both counsel expressly agreed that the parties would benefit from clarification and modification "in areas of conflict" and worked with the court to identify the issues that the court would consider. The June 5 order recited that the parties, "through counsel, have stipulated to have the court clarify or, as necessary, modify the parenting plan" and specified the issues.

Luthra argues that his counsel's stipulation was invalid because he was not physically present at the hearing and had no opportunity to agree to the stipulation. He cites no relevant authority to support this contention.

Generally, "[o]nce a party has designated an attorney to represent the party in regard to a particular matter, the court and the other parties to an action are entitled to rely upon that authority until the client's decision to terminate it has been brought to their attention." Engstrom v. Goodman, 166 Wn. App. 905, 916, 271 P.3d 959, review denied, 175 Wn.2d 1004 (2012). This principle controls the resolution of this claim of error.

Luthra's reliance on Graves v. P.J. Taggares Co., 94 Wn.2d 298, 616 P.2d 1223 (1980), is misplaced. In that case, the court recognized the validity of the general rule, but held that an attorney may not surrender "'a substantial right of a client'" without express authority from the client. Graves, 94 Wn.2d at 303 (quoting 30 A.L.R.2d 944, 947, § 3 (1953)). But the court in Graves acknowledged that it was considering an "extraordinary" series of events, including the party's attorney's failure to respond to the opposition's summary

-4-

judgment motion, failure to appear at the summary judgment hearing, unauthorized withdrawal of a jury demand, failure to present any evidence at trial, and failure to advise his clients of a $131,200 memorandum order entered against them. The trial court was not involved with any of the disputed conditions or stipulations. Graves, 94 Wn.2d at 301. Under the circumstances, the court concluded that the attorney's client was entitled to vacate the adverse summary judgment and ultimate judgment. Graves, 94 Wn.2d at 303.

No comparable egregious circumstances are present here. Counsel for both sides agreed to the stipulation in open court, and the court then incorporated the stipulation into the June 5 order. Luthra did not appeal or seek discretionary review of the June 5 order, raise an objection, or file a motion to vacate. Rather, he participated in the subsequent clarification and modification process with the same counsel. Nothing in the record suggests that the court erred by accepting the stipulation and conducting proceedings consistent therewith. Similarly, nothing in the record demonstrates that Luthra's attorney breached any duty to him by entering into the stipulation.

III

Luthra next contends that the trial court erred by imposing restrictions in the amended final parenting plan based on RCW 26.09.191(3). The precise nature of this claim is unclear. The provision in the amended parenting plan setting forth the statutory limiting factors is identical to the provision in the original

-5-

parenting plan. Luthra's arguments appear to rest on the mistaken assumption that the trial court was required to review the evidence de novo and enter new findings to support the amended parenting plan. Luthra cites no authority to support this assumption.

Essentially, Luthra asks this court to review the findings of fact and restrictions in the original parenting plan. But he did not appeal or seek review of those findings and statutory limiting factors and cannot do so now. See Detonics ".45" Assocs. v. Bank of Cal., 97 Wn.2d 351, 353, 644 P.2d 1170 (1982) (failure to appeal the trial court's legal ruling on preemption makes that ruling the law of the case).

IV

Luthra next contends that even if the stipulation was valid, the trial court's modification of the mid-week residential provision was invalid because it was not part of the agreement. He claims that the court modified the provision by imposing an "additional burden."

Luthra offers no coherent argument to support his conclusory claim. The language in both the 2010 parenting plan and the 2013 amended parenting plan clearly provides that the mid-week visits will resume only when the court deems Luthra in compliance with the court's treatment orders. Luthra fails to demonstrate that the amended parenting plan imposed any new requirements. To the extent that the trial court clarified the parenting plan, Luthra fails to

demonstrate any abuse of discretion. See Rivard v. Rivard, 75 Wn.2d 415, 419, 451 P.2d 677 (1969) (appellate court reviews clarification of a parenting plan for an abuse of discretion).

V

Luthra next contends that the trial court erred in awarding $5,895 in attorney fees for intransigence following the hearing on his motion for reinstatement of mid-week residential visits. The trial court found that Luthra had engaged in intransigent conduct "including, but not limited to, seeking reinstatement of his midweek residential time despite his clear failure to comply with specific court orders regarding treatment."

The determination of intransigence necessarily rests on the specific facts of each case, but may involve "foot-dragging," obstruction, the filing of unnecessary or frivolous motions, a refusal to cooperate with the opposing party, refusal to comply with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly. In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992) (quoting Eide v. Eide, 1 Wn. App. 440, 445, 462 P.2d 562 (1969)). We review an award of attorney fees based on intransigence for an abuse of discretion. In re Marriage of Bobbitt, 135 Wn. App. 8, 29-30, 144 P.3d 306 (2006).

Following the dissolution trial, the court entered unchallenged findings that Luthra suffers from "severe OCD, which is a lifelong condition that cannot be

cured" and directed that he engage "in intensive, home-based therapy . . . with a therapist highly experienced in intensive OCD treatment." The court conditioned reinstatement of Luthra's mid-week residential visits on compliance with the court's treatment order.

At the June 5 hearing, the court found that, on its face, Luthra's motion failed to demonstrate compliance with the clear requirements of the treatment order. Luthra conceded that he was not participating in home-based OCD therapy and had not done so. He also failed to submit any evidence to establish that his current therapists were "highly experienced in intensive OCD treatment" or to support his claim that he could not find or afford home-based therapy. On appeal, Luthra cites no evidence in the record to the contrary. His assertion that his therapists are properly licensed is irrelevant. Under the circumstances, Luthra fails to demonstrate that the trial court abused its discretion in awarding attorney fees for intransigence.

Luthra also contends that the evidence fails to support the amount of the fee award. But he fails to address the trial court's findings supporting the award or the evidence that the court considered. We therefore decline to consider Luthra's challenge. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

VI

In a related argument, Luthra asserts that the trial court erred in making an oral "finding" at the June 5 hearing that his therapists were "unqualified." But the court made no such "finding." Rather, the court correctly determined that Luthra failed to submit any evidence that his therapists were "highly experienced in intensive OCD treatment," as required by the treatment order. Moreover, as already indicated, Luthra's recitation of the licensing requirements for a mental health counselor provides no support for his claim that he complied with the court's treatment order.

VII

Luthra next contends that the trial court erred in imposing additional restrictions on his ability to contact his son. He argues that there is no "nexus" between his OCD and the restrictions on his mode of communication.

At the June 5 hearing, the parties stipulated that the trial court could consider clarifying the parenting plan with "[g]uidelines regarding child-father communication through various technologies." The amended parenting plan specified that "[t]he designated form of contact between father and child when the child is not with the father shall be by telephone with audio only" and prohibited communication "through other media, including but not limited to e-mail, Facetime, chat rooms and other web-based communication."

Contrary to Luthra's suggestion, the restrictions were a clarification, not a modification of the parenting plan. A modification occurs "when a party's rights are either extended beyond or reduced from those originally intended." Christel, 101 Wn. App. at 22. A clarification is "merely a definition of the rights which have already been given and those rights may be completely spelled out if necessary." Rivard, 75 Wn.2d at 418.

The original parenting plan provided that the child would not have his own cell phone, and included detailed procedures regulating telephone contact with the child. Those provisions are largely incorporated into the amended parenting plan.

The unchallenged findings established Luthra's long-term impairment, the adverse effect of his conduct on the child's best interest, and his ongoing abusive use of conflict that created a danger of serious damage to the child's psychological development. The trial court later enforced the original parenting plan by prohibiting the parties from sending text messages "to each other for any purpose, including the Father sending messages to the child."

Permitting Luthra to have unlimited and unregulated communication with the child via social media would be inconsistent with the unchallenged evidence and findings supporting restrictions and effectively negate the court's detailed procedures regulating telephone contact in the original parenting plan. Under the circumstances, the restrictions in the amended parenting plan were a

clarification, not a modification. Luthra fails to demonstrate that the trial court abused its discretion by restricting the mode of communication during non-residential periods.

## VIII

Finally, Luthra contends that the trial court lacked authority to enter an order on reconsideration modifying the amended parenting plan because his appeal was already pending in this court. See RAP 7.2(e). Luthra fails to note, however, that Forrest filed a motion seeking this court's permission for entry of the trial court's order. See RAP 7.2(e). A commissioner ruled that this court's permission was unnecessary under the circumstances. Luthra did not move to modify the commissioner's ruling. We decline to revisit the issue.

## IX

Forrest requests an award of attorney fees based on the filing of a frivolous appeal or intransigence in this court. We decline to award attorney fees on these grounds. However, an award of attorney fees for expenses incurred in responding to Luthra's appeal of the trial court's award of attorney fees is warranted. See In re Marriage of Mattson, 95 Wn. App. 592, 606, 976 P.2d 157 (1999) (awarding attorney fees on appeal based on party's "intransigence at trial and his appeal of that outcome"). Accordingly, we award Forrest attorney fees reasonably incurred in responding to Luthra's appeal of the trial court's fee

No. 71018-4-I/12

award. Upon compliance with RAP 18.1(d), a commissioner of this court will enter an appropriate order.

Affirmed.

We concur:

_Spearman, C.J._

_Dwyer, J._

_Cox, J._