# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the Marriage of

JAMES ALAN CLARK,

Appellant,

v.

WENDY KRISTINE CLARK,

Respondent.

No. 79424-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 13, 2020

ANDRUS, J. — The trial court denied James Clark's petition to modify his child support obligation based on a reduction of employment hours and income. His appeal is largely focused on arguments that he failed to preserve for appeal. To the extent he challenges the merits of the court's decision on his petition to modify, we conclude that the trial court did not abuse its discretion and affirm.

## FACTS

James and Wendy Clark dissolved their marriage in 2011.[1] They have two children, who were 6 and 8 years old at the time of the dissolution. The trial court entered agreed orders that equally allocated residential time with the children and apportioned the child support obligation according to the standard

---

[1] Some of the factual background is derived from this court's recent unpublished decision resolving James's appeal of a 2017 order entered earlier in this proceeding. See Clark v. Clark, No. 77253-8-I (Wash. Ct. App. June 11, 2018) (unpublished) http://www.courts.wa.gov/opinions/pdf/772538.pdf. As in our prior opinion, because the parties share the same last name, we refer to them by first name for clarity.

child support calculation based on each parent's proportionate share of the combined income.[2]

Approximately one year after the final orders were entered, James began multiple attempts to reduce his child support obligation, seeking to deviate from the standard child support calculation based on the substantial amount of time the children reside in his household. See RCW 26.19.075(1)(d).[3] The court rejected these requests.

In 2014, after the court had denied two petitions to reduce support and awarded attorney fees to Wendy in connection with one of those requests, James filed a petition to modify support. He again requested a deviation based on the shared residential schedule. A court commissioner denied the motion, observing that a deviation for residential credit is discretionary and generally not warranted where there is a significant disparity in the parents' income. At the hearing on James's motion, the commissioner explained:

> The bigger the differential in income, the less likely you are to get a residential credit, and the reason for that is because the household that has 50 percent of the time with the lower income is at an economic disadvantage in maintaining the life that these kids have . . .

---

[2] The record on appeal does not include the final dissolution and child support orders entered in 2011, but James does not dispute that he agreed to an amount of child support that did not deviate from the standard calculation.

[3] RCW 26.19.075(1)(d) provides, in pertinent part:

> The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. . . .

The commissioner denied Wendy's fee request, but cautioned James that she would "absolutely" award fees if he filed another motion raising the same argument.

In 2017, James filed a petition to modify the parenting plan. This time, he proposed a slight increase in his residential time with the children, along with a reduction of child support. James described his proposal as a "college savings plan," which would allow him to set aside over $1,000 per month for future postsecondary education expenses. While urging the court to dismiss James's petition, Wendy also sought an adjustment of child support, because it had been two years since entry of the previous order of support and one of the children had moved into a new age bracket. See RCW 26.09.170(6)(b) (allowing for adjustment after one year if a child is no longer in the age category upon which the support obligation is based).

A commissioner denied James's petition, describing it as a "cynical" and transparent attempt to further his own financial interests. The commissioner granted Wendy's requested adjustment and awarded her attorney fees. The superior court denied James's motion for revision and awarded additional attorney fees to Wendy. This court upheld the superior court's order on appeal. See Clark v. Clark, No. 77253-8-I (Wash. Ct. App. June 11, 2018) (unpublished) http://www.courts.wa.gov/opinions/pdf/772538.pdf.

The 2017 child support order required James to make a transfer payment of $2,054 to Wendy based on his 72 percent proportional share of the combined income. The order states:

3

Father has requested [a] residential deviation which has been denied multiple times by the court due to disparity in income between the parties. Downward deviation for post-secondary support is untimely due to [the] age of the children.

While James's appeal was pending, he refused to pay the full amount of child support. As a result, on June 26, 2018, a court commissioner found James in contempt for failing to comply with the July 2017 support order. The court ordered him to pay the child support arrearage as well as attorney fees and costs of more than $2,500 to Wendy.

On August 1, 2018, James filed the petition at issue in this appeal, seeking to modify child support based on an alleged substantial change of circumstances with respect to his employment and income. See RCW 26.09.170(5)(a) ("[a] party to an order of child support may petition for a modification based upon a showing of substantially changed circumstances at any time"). James also asserted that the current support order had been in place for at least a year and created a "severe economic hardship." See RCW 26.09.170(6)(a) (support order may be modified if it has been in place for at least a year without a showing of substantially changed circumstances if the order creates a "severe economic hardship.").

James explained that he had been involuntarily laid off by his employer, Northrop Grumman Corporation (Northrop), on July 26, 2018, and hired by a different company, Engineering Services Network (ESN), the following day. However, James stated that while he was reemployed at approximately the same hourly rate of pay, his new position at ESN was part-time. Consequently, he claimed his annual salary was reduced to approximately half of his 2017 income.

4

James stated that his part-time schedule would allow him to restart a consulting business he had operated in the past. While he predicted that it would take approximately a year for the new business to become profitable, James opined that developing his own business would ultimately increase his earning potential and said he could "picture roles in the company" for his children in the future. James argued that, as a result of his reduced income, there was no longer a substantial disparity between his income and Wendy's. He believed that it was "long past time" for the court to award a residential credit under RCW 26.19.075(1)(d) in light of the parties' equal residential time. Based on his projected new income, James claimed that his monthly child support obligation should be reduced to $1,059.

Two months later, James sought a temporary order eliminating his child support transfer payment. He also reiterated his challenges to the 2017 child support order that had been recently affirmed on appeal, including his claims that the existing child support order was detrimental to the children because it prevented him from saving for their future educational expenses and that he was entitled to a residential credit deviation.

Wendy opposed modification, arguing that James's decision to accept part-time employment was not a basis to modify the 2017 order. Wendy explained that Northrop, James's employer for the preceding 13 years, historically issued layoff notices before its defense contract was renewed and then promptly rehired its employees after renewal. Wendy pointed out that James did not say whether he had been offered full-time employment and

observed that his latest motion represented his sixth attempt since 2011 to reduce child support.

James denied that he was voluntarily underemployed. He argued Wendy had no personal knowledge of the negotiations surrounding his 2018 layoff and rehiring, but at the same time, he provided no information to verify that he was not offered reemployment with Northrop or that he was not offered full-time employment at any rate of pay.

At the October 2018 hearing on his motion, James argued that the transfer payment required by the 2017 support order was neither sustainable nor equitable in light of his reduced income. But instead of elaborating on his employment options, James focused on the previously-litigated issue of a deviation based on residential credit. James said that his purpose, "[f]irst and foremost," was to obtain a residential credit deviation. James claimed that any payment above $1,440, which represented fifty percent of the total child support obligation, was "backdoor[]" maintenance. James also informed the commissioner that he had obtained all the credentials to become a "digital forensics expert witness," and that he expected to substantially increase his income "within the next year."

The commissioner denied the motion to modify, concluding there was no substantial change in circumstances to warrant modification of child support. The commissioner noted that James's requests for a discretionary deviation based on residential credit had been previously denied based on a significant disparity in the parties' incomes and that, since he planned to work full-time and

to expand his salary base in the near future, the disparity was not eliminated. The commissioner denied reconsideration and ordered James to pay Wendy approximately $8,000 in attorney fees.

James filed a motion to revise the commissioner's ruling. Wendy then filed a motion seeking to declare James a vexatious litigant and to require that he post a bond before filing further pleadings seeking affirmative relief. She also requested attorney fees incurred in responding to James's motion to revise.

Following a hearing on both motions, the trial court denied James's motion to revise, based on a de novo review of the record before the commissioner, but granted Wendy's motion to declare James to be a vexatious litigant. The court entered an order placing limitations on James's ability, for a year, to file petitions or motions pertaining to child support. The court denied Wendy's request for attorney fees.

James appeals from the order denying revision and the order granting Wendy's motion to prevent vexatious litigation.

## ANALYSIS

### A. Constitutional Arguments

James primarily argues on appeal that he is entitled to a deviation from the standard calculation child support obligation. He claims that the failure to apply a deviation in a case of equally allocated residential time violates several constitutional principles, including substantive and procedural due process and equal protection. He also challenges the constitutionality of the statutory

7

provision governing residential credit deviations, RCW 26.19.075(1)(d), insofar as it does not require deviations in cases involving a 50/50 residential schedule.

But James did not argue below that a residential credit deviation was constitutionally required and did not challenge the constitutionality of RCW 26.19.075(1)(d). Under RAP 2.5(a), we generally do not entertain issues not raised in the trial court in order to encourage the efficient use of judicial resources. Rapid Settlements, Ltd. v. Symetra Life Ins. Co., 166 Wn. App. 683, 695, 271 P.3d 925 (2012).

RAP 2.5(a)(3) provides an exception to this rule. To determine whether to consider an unpreserved error under RAP 2.5(a)(3), we inquire whether (1) the error is truly of a constitutional magnitude and (2) whether it is manifest. An error is manifest when the asserted error has practical and identifiable consequences in the trial court. Aventis Pharmaceutical, Inc. v. State, 5 Wn. App. 2d 637, 650, 428 P.3d 389 (2018). Manifest error must be "obvious on the record," and "unmistakable, evident, or indisputable." State v. O'Hara, 167 Wn.2d 91, 100, 217 P.3d 756 (2009); State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

James does not allege, much less establish, manifest constitutional error. His contention that RCW 26.19.075(1)(d) is unconstitutional is unsupported and conclusory. He provides no cogent argument or persuasive authority that supports his position that child support allocated in accordance with each parent's proportionate share of the combined income is not narrowly tailored and does not advance a compelling state interest. See In re Custody of Smith, 137 Wn.2d 1, 14-15, 969 P.2d 21 (1998) (parental autonomy is a fundamental

liberty interest protected by the Fourteenth Amendment upon which the State may not intrude without a compelling interest and narrow tailoring). Rather than addressing the criteria of RAP 2.5(a)(3), James simply explains that he failed to raise the constitutional issues below because "due process arguments concerning errors of law belong in front of the appellate court." Although James raises numerous and extensive constitutional arguments related to a deviation based on the shared residential schedule, he fails to make a plausible showing that the alleged error is manifest. We therefore decline to address James's constitutional arguments.

B. Substantial Change in Circumstances

James argues the court below erred in denying his request to modify child support based on his alleged substantial change of circumstances. Washington courts have statutory and equitable powers to modify support orders. RCW 26.09.175; Pippins v. Jankelson, 110 Wn.2d 475, 478, 754 P.2d 105 (1988). As a general rule, courts must find a substantial change of circumstances before modifying a support order. RCW 26.09.170(5); Pippins, 110 Wn.2d 475.

"On a revision motion, a trial court reviews a commissioner's ruling de novo based on the evidence and issues presented to the commissioner." In re Marriage of Williams, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). "When an appeal is taken from an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's." Williams, 156 Wn. App. at 27. We review such an order for manifest abuse of

9

discretion. In re Marriage of Schumacher, 100 Wn. App. 208, 211, 997 P.2d 399 (2000). A trial court abuses its discretion if its decision is manifestly unreasonable, or is based on untenable grounds or an erroneous view of the law. In re Marriage of Scanlon, 109 Wn. App. 167, 174-75, 34 P.3d 877 (2001).

James contends that the court "ignored" his changed circumstances and reduced income. He also claims that the court failed to appreciate his need to "prioritize" the children by working less than full-time in order to fulfill his substantial caretaking responsibilities. But the denial of James's motion does not, in and of itself, suggest that the court failed to consider his new circumstances. The record supports the conclusion that James was likely to experience only a temporary reduction in income and that he had no intention of relying solely on part-time income from ESN. According to James's financial documents, his reported expenses, excluding child support, significantly exceeded his new income from ESN.[4] James conceded that part-time employment was "not a long term option" for him. He admitted it would be appropriate to credit him immediately with additional annual earnings generated by his new business of between $18,000 and $30,000. The court had a basis in the record for rejecting James's argument that his employment status would lead to a significant reduction in his income.

James also did not establish that his salary reduction was unavoidable. He did not describe any specific efforts to secure full-time employment and did not specifically say whether he was offered full-time employment, or what, if any,

---

[4] According to James's financial declaration submitted in August 2018 in conjunction with his petition to modify support, at his new monthly income, his household would operate at a monthly deficit of approximately $5,000.

offer his previous employer made. Instead, he vaguely asserted that the "layoff/rehire process can be brutal," that managers he previously reported to had left, that his "program" was "in flux," and that the "overall workload" was reduced. He provided very few details and nothing to substantiate his claim that, by accepting part-time hours, he had "saved his job."

James also asserted below that he accepted reduced hours in order to meet the needs of his teenaged children. This assertion, however, is arguably inconsistent with his historical ability to work full-time and manage his parenting responsibilities and his contention that he needs the additional time to develop his own business. The record shows that the children have resided with James 50 percent of the time since 2011, and he apparently worked full-time throughout that 7-year period. And his stated intent was to devote his additional available hours, not to his children, but to developing a business. The court did not manifestly abuse its discretion in finding James's arguments to be unconvincing. Because the court rejected James's contention that there has been a substantial change in circumstances, it did not abuse its discretion in rejecting his request for a residential credit.

James cites In re Marriage of Payne, 82 Wn. App. 147, 916 P.2d 968 (1996), to argue that the court abused its discretion because his child support obligation is based on prior, not current, earnings. His reliance on Payne is misplaced. The father in Payne earned approximately $600 less per month after he moved to Seattle to be closer to his daughter following the mother's relocation. Payne, 82 Wn. App. at 151. We concluded the trial court did not err

in calculating the father's child support obligation based on his projected future income in Seattle, rather than his prior earnings, because to do otherwise would "unfairly penalize" him for moving. Id. In those circumstances, we deemed the father's slightly higher income from a previous position to be irrelevant. Payne is distinguishable because, unlike the case here, the change in income was not associated with probable voluntary reduced work hours, but a change in location and employer due to the other parent's relocation. See RCW 26.09.170(5)(b) ("An obligor's voluntary unemployment or voluntary underemployment, by itself, is not a substantial change of circumstances.")

James also cites Schumacher for the position that full-time employment need not always amount to 40 hours per week. But unlike the father in that case, James does not argue, here or below, that less than 40 hours should be considered full-time employment, in view of his work history, education, age, and other relevant factors. See Schumacher, 100 Wn. App. at 215.

Based on the record here, the trial court did not abuse its discretion in denying James's petition to modify the child support order.

C. Vexatious Litigation Order

James also challenges the court's order placing temporary limitations on his ability to challenge the order of child support.

"[A] court may, in its discretion, place reasonable restrictions on any litigant who abuses the judicial process." See In re Marriage of Giordano, 57 Wn. App. 74, 78, 787 P.2d 51 (1990). Here, the court found that James had "engaged in a pattern of abusive litigation tactics that constitute vexatious

12

litigation regarding child support, particularly the issue of a residential credit." The court noted that James's "comments at oral argument support this finding."[5] The court determined that it was "appropriate and necessary" to place restrictions on James's ability to file future motions pertaining to child support. Specifically, the order prohibits James from filing any motions regarding child support within a year of the court's December 11, 2018 order unless he is represented by a licensed attorney, or unless he either (1) posts a $10,000 bond in the superior court registry prior to filing a petition or motion, or (2) obtains prior approval of a court commissioner before filing a new petition or motion.[6]

James does not challenge the finding that he engaged in "abusive litigation tactics that constitute vexatious litigation," or otherwise challenge the sufficiency of the court's findings. The only argument he raises with respect to the order is that he cannot be deemed a vexatious litigant because he complied with statutory requirements as to the timing of his June 2017 and August 2018 petitions. See RCW 26.09.170(6), (7). But James provides no authority or reasoned argument to support his position. As a general matter, we decline to address arguments that are unsupported by citation to authority or cogent argument. See RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

James does not challenge any of the specific restrictions or contend that the injunction was overly broad. Yurtis v. Phipps, 143 Wn. App. 680, 693,

---

[5] The hearing on the motions was apparently not transcribed and a report of the proceeding is not included in the record on appeal.

[6] In these proceedings involving his 2018 petition, James has represented himself pro se, but it appears that he was represented by counsel earlier in the litigation.

181 P.3d 849 (2008) (courts must be careful not to impose overly comprehensive injunctions that restrict litigation). And he fails to mention critical facts about the scope of the order. The order was not a moratorium and set forth three separate means by which James could seek relief from child support prior to expiration of the order. See Giordano, 57 Wn. App. at 78 (no abuse of discretion where trial court's order restricting ability to file motions did not amount to a "total denial of access" to the court). James fails to establish that the court abused its discretion.

D. Attorney Fees

Wendy requests attorney fees on appeal, citing RAP 18.1, RCW 26.09.140, and RAP 18.9 based on her need and James's ability to pay, principles of intransigence, and a frivolous appeal.

This court has the discretion to award attorney fees on appeal under RAP 18.1(a) if authorized by applicable law. RCW 26.09.140 allows the appellate court, in its discretion, and based on consideration of the "financial resources" of both parties, to order a party to pay the attorney fees of the other party in cases governed by chapter 26.09 RCW. The court may also award fees based on conduct that may be characterized as "foot-dragging" or "obstructionist." MacKenzie v. Barthol, 142 Wn. App. 235, 242, 173 P.3d 980 (2007); Eide v. Eide, 1 Wn. App. 440, 445, 462 P.2d 562 (1969). And under RAP 18.9, the appellate court may impose fees against a party who files a frivolous appeal. "An appeal is frivolous if the appellate court is convinced that the appeal presents no debatable issues upon which reasonable minds could differ and is so lacking in

14

merit that there is no possibility of reversal." In re Marriage of Foley, 84 Wn. App. 839, 847, 930 P.2d 929 (1997).

We conclude that attorney fees are warranted under RAP 18.9 because James's appeal lacks merit. He largely focused on issues not properly before us, did not assign error to any of the key factual findings, failed to brief in any meaningful way the basis for reversing the finding that he is a vexatious litigant, and presented no debatable issues for review. We therefore grant Wendy's request for attorney fees and costs under RAP 18.9, subject to her compliance with RAP 18.1.

Affirmed.

Andrus, J.

WE CONCUR: