**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In re the Parentage of W.J.M., | No. 79177-0-I |
| Child, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| DAPHNE CHUA, | |
| Respondent, | |
| TYLER MCGRUE, | |
| Appellant. | |

LEACH, J. — Tyler McGrue appeals the court's June 3, 2018 order awarding attorney fees, costs, and transportation expenses, and the court's order clarifying the June 3, 2018 order. He contends the record does not support the court's findings that he had the ability to pay attorney fees and costs, that he was responsible for Daphne Spence's transportation expenses that she might have otherwise avoided, and that he acted in contempt of the trial court's order of April 20, 2018. He also contends the court abused its discretion in determining the attorney fees were reasonable and allowing certain litigation costs to be included in the award. Because we agree that the court's findings are insufficient and not supported by substantial evidence, and that the court abused its discretion, we reverse the orders awarding attorney fees, costs, and transportation expenses and remand for further proceedings.

Citations and pincites are based on the Westlaw online version of the cited material.

## FACTS

Tyler McGrue and Daphne Spence[1] have one child together, W.J.M. The couple never married, and in June 2016, they entered into a parenting plan. Under the terms of the plan, Spence moved to Monterey, California and W.J.M. lived with her most of the time. The child stayed with McGrue for two weeks, every three months up to two three-night periods a month, in California and for holidays every other year. The visitation plan was scheduled to change when W.J.M. began attending school in the autumn of 2018. McGrue would have W.J.M. for spring break, mid-winter break, alternating winter breaks, and four weeks during the summer increasing to six weeks when W.J.M. entered third grade. McGrue and Spence had joint responsibility for major decisions such as education and non-emergency health care. In the event of disagreements, the plan required the parties to engage in mediation before raising the issue in court.

In the autumn of 2017, Spence learned that her husband, who serves in the military, would be transferred and permanently stationed in Okinawa, Japan in the spring or summer of 2018, although the written orders had not been issued. Before Spence and W.J.M. could move to Japan, Spence needed court orders authorizing the relocation, modification of the parenting plan, and a passport for W.J.M. In October 2017, Spence asked McGrue to sign a consent form[2] showing he agreed

---

[1] Daphne Chua is now Daphne Spence. We use her current surname in this opinion.

[2] Federal regulations require both parents to execute a passport application on behalf of a minor under age 16 with some exceptions. 22 C.F.R. § 51.28(a)(2). One parent may obtain a passport for a child by submitting a notarized statement of consent from the other parent. This can be done with a DS-3053 form though use of the form is not required. 22 C.F.R. § 51.28(a)(3)(i).

to the issuance of a passport for W.J.M. McGrue wanted to reach an agreement with Spence on modifications to travel and visitation in the parenting plan, and said he would sign both documents, an amended parenting plan, and the consent form at the same time. Spence was unwilling at that time to discuss and agree on changes to the parenting plan that would not take effect until sometime the following year. The parties reached an impasse.

In January 2018, Spence's husband received official orders transferring him to Okinawa on May 15, 2018. She and her husband planned to move at the end of April. McGrue and Spence apparently discussed some modifications to the parenting plan in early January but did not reach an agreement on everything. On February 15, 2018, Spence filed a Notice of Intent to Move with Children and a proposed parenting plan.[3] Spence also filed an ex parte motion, set for February 16, requesting an order requiring McGrue to sign a DS-3053 consent form (passport motion). The court denied the motion explaining that Spence should "note a motion before the trial judge under LCR 7."[4]

Nearly a month later, on March 14, 2018, the case had not been assigned to a trial judge, so Spence filed a motion to modify the parenting plan,[5] a motion

---

[3] Spence did not mail copies of the relocation notice and the proposed parenting plan to McGrue and his counsel until February 28, 2018. McGrue stated he received them on March 2, 2018. He filed an objection on March 30.

[4] McGrue requested an award for attorney fees, which the court reserved for the trial judge.

[5] Spence later explained that she filed the petition to modify the parenting plan to "trigger a case schedule and have a trial judge assigned." She did not intend to pursue the petition to modify, but she did not dismiss the petition until shortly before the hearing on April 20, 2018 and well after McGrue had filed a response.

for adequate cause, and a motion for a temporary order authorizing relocation. The case was assigned to a judge the same day. The following day, at Spence's request, the court scheduled the passport motion for a hearing on April 6, but it did so without waiting for a response from McGrue's attorney who was not available from April 6th to April 16th. Despite McGrue's submission of a notice of unavailability, and his request to reschedule, Spence did not change the hearing date. On March 30, 2018, McGrue filed a motion to continue. He also filed responses to Spence's motions and submitted his own proposed parenting plan.

Instead of responding to McGrue's motion to continue, Spence filed a notice of disqualification of the judge. After the case was reassigned, Spence filed a new passport motion and noted it for hearing on April 20, 2018. She also asked McGrue to agree to mediation as soon as possible with a mediator of McGrue's choice. McGrue did not respond.

At the hearing on April 20, 2018, the court ordered the parties to immediately engage a mediator to help them resolve their disputes over changes to the parenting plan and to return to court on April 26, 2018. The parties attended mediation on April 23, 2018 and reached an agreement. The court also granted Spence's passport motion ordering McGrue to provide the signed consent form no later than noon on April 23, 2018. McGrue complied.[6] Nonetheless, when Spence traveled to San Francisco to get the passport on April 25, the State Department

---

[6] At the follow-up hearing on April 26, 2018, Spence claimed that McGrue had sent only one original signed and notarized release when in fact she needed two such originals. But, Spence's email forwarding McGrue the consent form included just one form, and it specifically referred to only "the original" to which he needed to return.

4

advised her McGrue had placed a "hold" that prevented the Department from issuing a passport.[7] At the April 26 hearing, McGrue said he had forgotten about placing the hold months earlier. He then lifted it so Spence was able to obtain the passport for W.J.M. that day.[8] As a result of McGrue's failure to remember and remove the hold, Spence and her family made a second trip to San Francisco just days before the move to Japan incurring significant expenses obtaining the passport.

At the hearing on April 26, Spence orally moved for an order directing McGrue to reimburse her for the cost of the second trip and for any "expedited overnight fees" she incurred to have the passport delivered to her home in Monterey. The court did not address Spence's request that day. Spence filed a motion in May requesting an award of "attorneys' fees and travel expenses for [McGrue's] failure to comply" with the court's order of April 20, 2018. In her declaration, however, Spence stated she was requesting $5,000 in attorney fees "for having to litigate this matter at all." McGrue objected and requested the court award him fees and costs he incurred in responding to Spence's initial ex parte

---

[7] Though the record is not completely clear, it is likely the "hold" to which the parties referred to was placed through the Children's Passport Issuance Alert Program (CPIAP), which authorizes the State Department to contact a parent who requests to verify whether he or she has consented to issuance of a passport for the named child. A parent may also lodge an objection to the issuance of a passport through CPIAP, although the State Department advises parents that under the circumstances prescribed in 22 C.F.R. § 51.28, the State Department may issue a passport despite the objection. 22 C.F.R. § 51.28(c).

[8] The court directed the parties to return to court, in the afternoon on April 26, to report whether the hold on the passport had been lifted. McGrue appeared for the hearing but Spence did not.

passport motion and her motion for fees and travel expenses. On June 3, 2018, the court issued an order granting Spence's motion:

> "The attorney's fees are reasonable; the respondent has the ability to pay. The transportation cost of $718.73 are also awarded, but for Mr. McGrue's contempt of this court's April 20, 2018 order. The costs would not have been incurred for the futile act, travel because as a result of the respondent's failure to release the State Department hold."

The court held a status conference on July 30, 2018. McGrue appeared through counsel, but Spence did not appear. McGrue advised the court that a notice of settlement would be filed. In early September, the parties filed a stipulation and order of dismissal, an agreed final order on the objection to relocation, and an agreed amended parenting plan.

In October, Spence moved for clarification of the court's award of fees and expenses, noting that while the order indicated the motion for attorney fees was granted, it did not state specifically the amount of fees awarded.[9] McGrue responded that the order did not state a sum certain in attorney fees and that it was unclear whether the court intended to order him to pay fees for his failure to remove the hold on the passport or for the entire case. He also objected to the court's findings that he had the ability to pay and that he had acted in "contempt" of the court's order. On October 30, 2018, the court issued an order clarifying its June 3 order as follows: "[McGrue] shall pay attorney's fees to [Spence] in the amount of $5,000. It is further ordered, adjuged [sic] and decreed Attorney's fees of $5,000.00 is awarded." McGrue appeals.

---

[9] Spence attested that McGrue had paid only the $718.73 in transportation expenses, which was an amount specified in the court's order.

ANALYSIS

McGrue contends the court erred in finding that he had the ability to pay attorney fees, costs, and transportation expenses, that he was responsible for Spence incurring transportation expenses that she may have otherwise avoided, and that he acted in contempt of the Court's order of April 20, 2018. He further contends the court abused its discretion in determining the attorney fees requested were reasonable and the included litigation costs in the award.

Generally, a court will not award attorney fees and costs of litigation unless authorized by contract, statute, or recognized ground of equity.[10] We apply a two part test in reviewing orders involving attorney fees: (1) we review de novo whether there is a legal basis for awarding attorney fees and (2) we review a discretionary decision to award or deny fees and the reasonableness of any attorney fee award for an abuse of discretion.[11] We review the trial court's findings of fact to determine if they are supported by substantial evidence, and if so, whether the findings support the conclusions of law.[12]

In a proceeding brought under chapter RCW 26.09, attorney fees may be awarded on a statutory basis pursuant to RCW 26.09.140 or on the equitable basis that that additional fees were caused by one party's intransigence.[13] The court's order awarding fees in this matter is ambiguous in that it suggests the fee award

---

[10] Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).
[11] Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).
[12] Wixom v. Wixom, 190 Wn. App. 719, 724, 360 P.3d 960 (2015).
[13] Eide v. Eide, 1 Wn. App. 440, 445, 462 P.2d 562 (1969).

could be based on either the statute or a finding of intransigence.[14] Because it is unclear whether the court relied on a statutory or an equitable ground, we address both.

A.      Attorney Fees Awarded Based on Statute

The trial court has discretion to award reasonable attorney fees under RCW 26.09.140 after considering the financial resources of both parties.[15] The party challenging the award bears the burden of proving that the trial court exercised its discretion in a way that was clearly untenable or manifestly unreasonable.[16] A court's decision is manifestly unreasonable if it is outside the range of acceptable choices given the facts and the controlling legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; and the decision is based on untenable reasons if it applies an incorrect standard or the facts fail to meet the requirements of the correct standard.[17]

---

[14] The court's finding that McGrue "has the ability to pay" suggests that the court may have based its award on RCW 26.09.140, which requires the court to consider the financial resources of the parties. But, the court's finding that "but for Mr. McGrue's contempt of this court's April 20, 2018 order, Spence would not have incurred additional expenses" suggests that the court may have based it's finding on intransigence.

[15] In re Marriage of Ayyad, 110 Wn. App. 462, 473, 38 P.3d 1033 (2002).

[16] In re Marriage of Knight, 75 Wn. App. 721, 729, 880 P.2d 71, 75-6 (1994) (citing Abel v. Abel, 47 Wn.2d 816, 819, 289 P.2d 724 (1955).

[17] In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

"To withstand appeal, a fee award must be accompanied by findings of fact and conclusions of law to establish a record adequate for review."[18] In addition, the trial court must state on the record the method it used to calculate the award.[19]

In considering the financial resources of both parties, the court must consider both the financial need of the spouse seeking fees and the ability of the other spouse to pay.[20] The absence of findings as to either need or ability to pay requires reversal.[21] When calculating the fee award, the court should consider: (1) the factual and legal questions involved; (2) the time necessary for preparation and presentation of the case; and (3) the amount and character of the property involved.[22]

McGrue challenges the court's award of fees and costs based on RCW 26.09.140. He contends the court erred in finding that he had the ability to pay fees and costs and that the court abused its discretion by determining the attorney fees Spence requested were reasonable and by including certain costs in the award. We agree.

The court made a single factual finding to support that balancing of McGrue's ability to pay against Spence's financial need. It found McGrue had the ability to pay. This finding is unsupported by any evidence in the record. Neither party submitted financial statements or declarations concerning their financial

---

[18] In re Marriage of Laidlaw, 2 Wn. App. 2d 381, 392, 409 P.3d 1184 (2018) (quoting Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 715, 9 P.3d 898 (2000).

[19] Marriage of Knight, 75 Wn. App. at 730.

[20] In re Marriage of Nelson, 62 Wn. App. 515, 521, 814 P.2d 1208 (1991).

[21] In re Marriage of Steadman, 63 Wn. App. 523, 529, 821 P.2d 59 (1991).

[22] Abel, 47 Wn.2d at 819.

condition. Neither party testified at a hearing regarding their financial need or ability to pay. If the trial court based its award on the authority granted by RCW 26.09.140, the record does not permit any meaningful review and must be reversed.

Nor is the court's conclusion that $5,000 is a reasonable amount of attorney fees for this relocation matter supported by the record. Spence entered into a flat rate fee agreement of $5,000 plus costs. The billing record submitted to the trial court reflects hours worked by counsel and staff except for attorney Jason Benjamin. The billing statement appears to document charges for time worked by two lawyers and three staff members, as well as charges for costs, such as filing fees and copying expenses. Spence's counsel, in an affidavit accompanying the billing statement, stated that if Spence had been billed on an hourly basis, she would have incurred fees through May 15, 2018 of $6,336.50.

The billing statement includes items that may not be recovered in a fee award. Costs are narrowly defined in RCW 4.84.010 to include expenses for filing, witness fees, and service of process.[23] Photocopying is not authorized as a cost that may be awarded to an opposing party.[24]

In addition to cost items that should be excluded from the fee award, fees for non-lawyer staff are not recoverable unless the services meet the criteria of

---

[23] Boeing Co. v. Sierracin Corp., 108 Wn.2d 38, 66, 738 P.2d 665 (1987).

[24] In re Marriage of Van Camp, 82 Wn. App. 339, 343, 918 P.2d 509 (1996); Austin v. U.S. Bank of Washington, 73 Wn. App. 293, 310, 869 P.2d 404, 414 (1994).

<u>Absher Const. Co. v. Kent School Dist. No. 415</u>.[25]  Nor may fees be awarded for time spent on duplicative work, unsuccessful claims, or unnecessary or unproductive activities.[26]  The billing statement includes a charge for 1.3 hours of attorney time for "travel to and from court house; drop off affidavit of prejudice," at a rate of $310 per hour.  Fees for work which does not require legal training, such as delivering documents, are not recoverable.

B.      <u>Attorney Fees Awarded Based on Intransigence</u>

A trial court may also consider whether additional legal fees were caused by one party's intransigence and award attorney's fees on that basis.[27]  "When intransigence is established, the financial resources of the spouse seeking the award are irrelevant."[28]  Intransigence includes "foot-dragging" and obstruction, filing repeated unnecessary motions, and conduct that makes the trial unduly

---

[25] 79 Wn. App. 841, 845, 917 P.2d 1086 (1995).  The Court adopted the following criteria for determining whether the services of non-lawyer personnel may be recoverable as part of an attorney fee award: "(1) the services performed by the non-lawyer personnel must be legal in nature; (2) the performance of these services must be supervised by an attorney; (3) the qualifications of the person performing the services must be specified in the request for fees in sufficient detail to demonstrate that the person is qualified by virtue of education, training, or work experience to perform substantive legal work; (4) the nature of the services performed must be specified in the request for fees in order to allow the reviewing court to determine that the services performed were legal rather than clerical; (5) as with attorney time, the amount of time expended must be set forth and must be reasonable; and (6) the amount charged must reflect reasonable community standards for charges by that category of personnel."

[26] <u>Boeing Co. v. Sierracin Corp.</u>, 108 Wn.2d 38, 65, 738 P.2d 665, 682 (1987); <u>Nordstrom, Inc. v. Tampourlos</u>, 107 Wn.2d 735, 744, 733 P.2d 208, 212 (1987); <u>Van Camp</u>, 82 Wn. App. at 342; <u>Absher Constr.</u>, 79 Wn. App. at 847.

[27] <u>In re Marriage of Greenlee</u>, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992).

[28] <u>In re Marriage of Morrow</u>, 53 Wn. App. 579, 590, 770 P.2d 197 (1989).

difficult and costly.[29]   Where a party's intransigence permeates the entire proceedings, the court need not segregate fees that were incurred as a result of intransigence from those that were not.[30]   Otherwise, only the fees incurred as a result of the other party's intransigence should be awarded.[31]

Although the court did not make a specific finding that McGrue was intransigent, it did find that he acted in "contempt" of the court's April 20, 2018 order. Spence's travel expenses for the second trip to San Francisco "would not have been incurred" if McGrue had released the hold preventing the State Department from issuing a passport to W.J.M.  McGrue contends the court erred in making these findings.[32]

McGrue contends that the court failed to consider that Spence failed to request two signed and notarized copies of the passport consent form for which she said she needed to obtain the passport for W.J.M. in San Francisco.  The record supports McGrue's contention that he was asked to return just one signed and notarized consent form.  There is no evidence that he was asked to print and sign two of the forms.  However, Spence clarified in her declaration of May 24, 2018 that she did not need the second copy of the consent form to obtain the tourist passport in San Francisco. She needed it to obtain the government passport for

---

[29] Greenlee, 65 Wn. App. at 708.

[30] Burrill v. Burrill, 113 Wn. App. 863, 873, 56 P.3d 993 (2002).

[31] In re Marriage of Crosetto, 82 Wn. App. 545, 565, 918 P.2d 954 (1996).

[32] We reject McGrue's argument that the trial court found him "sua sponte" in contempt without proper notice and a hearing.  We do not read the trial court's order as finding McGrue in contempt as the term is used in RCW 7.21.010 or RCW 26.09.160.  The court did not cite to any legal authority for such a finding, nor did Spence argue for such a finding.  Instead, the court used the term "contempt" in the ordinary sense of being disobedient, disrespectful, or scornful.

which she was able to get elsewhere. Thus, Spence's failure to request two signed and notarized consent forms following the April 20 hearing is not a reason why she had to make a second trip to San Francisco.

McGrue also argues that the court failed to consider Spence could have defeated the hold he had put in place by presenting the court's order authorizing her to obtain a passport for W.J.M. McGrue relies on 22 C.F.R. § 51.28(a)(3)(E), which provides that a passport application may be executed for a minor by only one parent if the parent provides a court order "specifically authorizing the applying parent or legal guardian to obtain a passport for the minor, regardless of custodial arrangements." We disagree with McGrue's assertion that under this regulation a court order will suffice to obtain a passport regardless of any hold the other parent has placed. The court's order did not authorize Spence to obtain a passport for W.J.M. "regardless of custodial arrangements". It gave her permission to obtain a passport for W.J.M. and it required McGrue to sign the appropriate consent form. To the extent the court concluded, but for the hold McGrue forgot he had placed, Spence could have obtained the passport on her first trip to San Francisco. The court did not abuse its discretion.

Spence contends that McGrue acted in "bad faith" and was intransigent "at every stage of the proceedings," justifying an award for all of her attorney fees and costs. We decline to affirm on this basis both because the court did not enter findings and conclusions to support such an award, and because there is not substantial evidence in the record to support such a finding. Spence contends, for example, that this matter would not have been litigated at all but for McGrue's

13

intransigence. In October 2017, however, McGrue wanted to reach an agreement with Spence on changes to the parenting plan before signing the consent form for the passport. It was Spence who refused to work out an agreement on how they would change the visitation and travel arrangements and not McGrue.

Further, it was Spence, not McGrue who chose to litigate the matter rather than submit the disagreement to mediation as required by the parenting plan. Spence claims she tried to pursue mediation, but the only evidence is an email message in early April 2018 requesting that McGrue agree to a mediation date.

Spence contends that McGrue's opposition to consenting to the passport was egregious because he did not object to her relocating with W.J.M. to Japan. We disagree. Relocation involves more than moving to the new location. The statute contemplates that the parent who is not relocating may object to proposed changes in the residential aspects of the parenting plan.[33] The adjustments to the visitation schedule and travel arrangements were precisely what was at issue for McGrue in this case. The trial court recognized that Spence's insistence that McGrue consent to the passport was "putting the cart before the horse until the court" determined whether temporary relocation was appropriate.

In a similar vein, Spence asserts that because the parenting plan the parties ultimately agreed to provide McGrue with essentially the same amount of residential time with W.J.M. as the parenting plan in place before Spence relocated, the litigation was for nothing. This reasoning ignores the parenting plan amendments Spence proposed when she filed the notice of relocation, which

---

[33] RCW 26.09.260(6).

would have made several significant changes that were disadvantageous to McGrue.[34] The parenting plan changes what the parties ultimately agreed to in mediation however McGrue avoided these disadvantageous changes.[35] Contrary to Spence's assertion, McGrue sought to protect legitimate interests.

Spence contends that McGrue is responsible for the pace of the proceedings and delays that threatened to interfere with Spence's relocation arrangements. Other than the issue with the hold McGrue had placed on the passport, the record does not support Spence's contention. The initial delay in the proceedings occurred when Spence noted the passport motion for an ex parte hearing. The judge denied the motion and explained that Spence should note the motion for a hearing before the judge assigned to hear the relocation motion. Spence has repeatedly asserted that RCW 26.09.480 authorized filing the passport motion ex parte. Spence misapprehends the statute. It authorizes the person relocating to obtain an order ex parte allowing relocation during the period in which the other party may file an objection to the motion to relocate.[36] The only

---

[34] Among the changes Spence proposed were: (a) permitting McGrue two weekend visits with W.J.M. in Japan per month provided that he pay 100 percent of the travel expenses; (b) requiring that McGrue accompany W.J.M. from both Spence's place of residence and returning to Spence's place of residence for all of W.J.M.'s visits with McGrue in the United States; (c) granting Spence sole decision-making authority for major health care and education issues; and (d) allowing Spence to relocate during her husband's active duty military service, likely every two years, without further court approval, without any changes to the parenting plan, and without advance notice to McGrue.

[35] The agreed parenting plan preserves joint decision-making, equally divides the task of accompanying W.J.M. on trips to and from the United States, and omits the language allowing Spence to relocate without court approval. It also provides McGrue the opportunity to have time with W.J.M. of up to 12 consecutive nights, twice a year, and in Japan at his own expense.

[36] RCW 26.09.480(2).

order that may be obtained ex parte under the statute is an order authorizing temporary relocation.[37] The statute does not authorize a motion related to a passport to be heard ex parte.

Spence also contends she was forced to file a petition to modify the parenting plan and a motion for adequate cause in mid-March because McGrue "refused" to file an objection to the motion to relocate. First, there is no evidence in the record that McGrue refused to file an objection.[38] Second, LFLR 5(e)(6) permits filing a motion to authorize temporary relocation before the chief family law judge if a party does not have an assigned judge. Spence was therefore not forced to file a petition to modify the parenting plan. In addition, Spence advised the court on April 20, 2018 that she had dismissed the petition to modify because "it's really not necessary. We were just trying to expedite the process of getting a trial judge …" She did not dismiss either the petition or the motion for adequate cause until shortly before the hearing date and well after McGrue had filed a response. McGrue was thus forced to incur fees responding to a petition that Spence never intended to pursue.

Some of Spence's other actions may have increased the delays. After the matter was assigned to a judge in mid-March, the court set a hearing on a date when McGrue's counsel was not available. Spence's counsel declined to agree to

---

[37] LFLR 5(b).

[38] McGrue filed a timely objection to the motion to relocate. Spence did not mail the notice of intent to relocate, and the proposed parenting plan, to McGrue's attorney until February 28, 2018, which was almost two weeks after she presented the passport motion ex parte. McGrue received the notice on March 2, 2018 and filed an objection on March 30. Thus, he did not refuse to respond, and he was not intransigent about responding.

a different hearing date, but then moved to disqualify the judge after McGrue moved for a continuance. It is certainly possible that the parties could have obtained an earlier hearing date had Spence filed the disqualification notice in mid-March instead of waiting until McGrue filed a motion.

As noted above, "to withstand appeal, a fee award must be accompanied by findings of fact and conclusions of law to establish a record adequate for review." Here, the court's findings and conclusions do not provide such a record. To the extent McGrue was intransigent, it did not permeate the entire proceedings. Only the fees that were incurred as a result of McGrue's intransigence, if any, may be awarded, and only after consideration of the appropriate factors, the reasonableness of the fees, and the accuracy of the parties' contentions.

## C.     Attorney Fees on Appeal

McGrue seeks an award of attorney fees on appeal. RAP 18.1 allows this court to award attorney fees on appeal if applicable law provides for an award of fees. Under RCW 26.09.140, on appeal, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." Although McGrue is the substantially prevailing party, he has not filed a financial declaration establishing his need. So, we deny his request.

CONCLUSION

We reverse the award of attorney fees and costs. We award McGrue statutory costs on appeal. We reverse and remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Appelwick, J._